**PREFERRED INSURANCE EX-
CHANGE, Appellee,**

v.

**William W. COSHOW, Appellant.**

**No. 24878.**

United States Court of Appeals,
Ninth Circuit.

June 8, 1971.

Morton Minikes (argued), Los Angeles, Cal., Rust, Hoffman & Mills, Sacramento, Cal., for appellant.

Harry L. Kuchins, Jr. (argued), of McFarland & Ferdon, San Francisco, Cal., for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and SMITH, District Judge.*

HAMLEY, Circuit Judge:

In this malpractice suit by Preferred Insurance Exchange (Preferred), against attorney William W. Coshow, tried without a jury, plaintiff obtained a judgment in the sum of $30,485.87. Coshow appeals.

The background facts are as follows: William H. Joy drove his automobile into a service station in Redding, California, operated by Al Martell. Augusta F. McBroom was a passenger in Joy's car. While James Newell, Martell's employee at the service station, was filling the gasoline tank of Joy's car, a fire or explosion occurred. Joy suffered burns from which he died. His passenger sustained nonfatal burns.

McBroom and the estate of Joy commenced an action for wrongful death and personal injuries against Martell and Newell in the Shasta County California, Superior Court. Joy was insured by Preferred. Martell was insured by Cal-Farm Insurance Company (Cal-Farm). Martell and Newell asserted that Newell was "using" Joy's automobile at the time the gas tank was being filled, that Newell was therefore an "additional" insured under the Preferred policy, and that Martell was covered under the doctrine of respondeat superior. Accordingly, they took the position that the liability features of Preferred's policy protected them, and they tendered the defense to Preferred.

Preferred denied coverage and refused to defend. The case was settled before trial. Martell's carrier, Cal-Farm, paid $25,000 towards the settlement to the es-

* The Honorable Russell E. Smith, United States District Judge for the District of Montana, sitting by designation.

tate of Joy and to McBroom, and the case was dismissed. The payment of $25,000 by Cal-Farm was made on behalf of Martell only, and not on behalf of Newell.

Thereafter, Cal-Farm and Martell brought an action against Preferred in the same California Superior Court (Martell action). They contended that Preferred was required to exhaust the limits of its insurance policy purchased by Joy in behalf of Martell and Newell before any monies would be required to be expended by Cal-Farm under its policy purchased by Martell. Accordingly, Cal-Farm and Martell asked for judgment against Preferred in the sum of $25,000 plus attorneys fees and costs. Preferred employed Coshow to represent it in that action.

In a pretrial order entered in the Martell action, Cal-Farm was allowed twenty days to file a memorandum of authorities and Preferred twenty days thereafter to file its memorandum of authorities. Cal-Farm filed a fifty-one page brief within twenty days. Coshow filed no brief for Preferred, even though he had obtained an extension of almost two months. His later explanation was that after receiving Cal-Farm's brief he was "wholeheartedly" in agreement with Cal-Farm. He did not advise Preferred that he did not intend to file a brief on its behalf.

The court in the Martell action awarded judgment against Preferred in the sum of $28,474.87. After the time within which Preferred could have moved for a new trial, Preferred discovered for the first time, and so advised Coshow, that it had mistakenly furnished the court and counsel on both sides with a copy of the wrong policy of insurance ("Champion" policy).[1] Within the time allowed to appeal, Preferred directed Coshow to take an appeal from the judgment entered against it. Through clerical error in Coshow's office, notice of appeal was not timely filed. Preferred has satisfied in full the judgment entered against it in the Martell action.

Preferred then began this diversity malpractice suit against Coshow. Preferred alleged that Coshow, by the exercise of due diligence and skill, could have obtained a final judgment in favor of Preferred, but that Coshow proceeded negligently and unskillfully. In the first claim set up in its complaint, Preferred made reference to Coshow's failure to file a pretrial brief in the Martell action. In its second claim, Preferred referred to Coshow's failure to file a timely notice of appeal.

After a trial without a jury, the district court rendered judgment for Preferred in the amount of $30,485.87. The district court filed an extensive opinion and findings of fact in which it held: (1) under Preferred's "Champion" policy which had been erroneously supplied to the court and counsel in the Martell action, Preferred owed no defense to Martell, and owed no defense to Newell insofar as the claim of the estate of Joy is concerned, but did owe a defense to Newell insofar as the McBroom claim is concerned; (2) under Preferred's "true" policy purchased by Joy, which was in effect at the time of the fire or explosion, Preferred owed a defense to Newell on both the estate of Joy and McBroom claims, but owed no defense to Martell on either claim; (3) because Cal-Farm paid out the $25,000 in the Martell action only on behalf of Martell, and Preferred owed Martell no defense under either its "Champion" or the "true" policy, the state trial court had erred in awarding any judgment against Preferred; (4) the failure of Coshow to perfect an appeal in the Martell action constituted negligence; and (5) had an

---

1. The Preferred policy which was actually in effect with Joy as the named insured, at the time of the fire and explosion, will be referred to herein as the "true" policy. We are advised that the Cal-Farm policy which was presented to the court in the Martell action was also the wrong policy, as a casual reading of it would have revealed.

appeal been taken in that action, the state appellate court would not have let stand the judgment against Preferred. On this reasoning the district court entered the judgment against Coshow now on appeal.

On this appeal Coshow correctly points out that the judgment for Preferred must be reversed if the district court erred in holding that, but for Coshow's negligence, Preferred would have prevailed in the Martell action. Coshow argues that Preferred would not have prevailed because: (1) Coshow would have been obliged to call the appellate court's attention to the "true" policy, which was not before the state trial judge and the merits of the Martell action would ultimately have been determined on the basis of Preferred's "true" policy, and (2) had the Martell action been decided on the basis of the "true" policy, Preferred would have been held liable to Martell and Cal-Farm.

In contending that Preferred would be liable to Martell and Cal-Farm under the "true" policy, Coshow calls attention to the "Insuring Agreements" thereof. Under paragraph I, Preferred agreed "to pay on behalf of the insured" liability for damages because of bodily injury or death, and, under Paragraph II, to defend "any suit against the insured." Thus, if Martell was an "insured," this provision would appear to afford him protection against the claims asserted by the estate of Joy and McBroom.

But Coshow concedes that under the definition of "insured," as set forth in Paragraph III of the "true" policy, Martell would not be covered and hence Preferred would not owe him a defense. This concession is well advised. Paragraph III recites that the unqualified word "insured," wherever used, includes not only the named insured but also " * * * (3) any person while using an automobile owned or hired by the named insured [Joy] * * *." This definition is subject to exceptions one of which, denominated (b), excludes from clause (3) of the definition "any person

* * * or * * * any agent or employee thereof, operating an automobile repair shop * * * service station * * * with respect to any occurrence arising out of the operation thereof." Under the established facts, Martell operated the service station where the fire and explosion occurred.

However, Coshow points out that there is attached to this "true" policy a "Garage" endorsement, under which the term "insured" is amended and redefined as follows in Paragraph B of the endorsement:

"The Definition of Insured Agreement of the policy is amended to read as follows:

"The unqualified word 'insured' includes * * * (2) any person while using an automobile covered by this endorsement, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

Coshow asserts that this amendment deletes the exemption as to service station operators and their employees. Accordingly, he argues, Newell was within the class of persons to whom the "true" policy afforded coverage, in view of Preferred's concession that Newell, while engaged in putting gasoline in Joy's automobile, was "using" the automobile with the permission of Joy. Coshow adds that Martell was also an additional insured since he was legally responsible as Newell's employer, under the doctrine of respondeat superior. Coshow also calls our attention to the fact that Preferred's "true" policy does not contain any language comparable to Exclusion Clause 8 of Preferred's "Champion" policy, which clause excluded coverage for "bodily injury to the insured."

This argument, based upon the Garage endorsement attached to the "true" policy, was not advanced by Coshow at the trial and was not dealt with by the district court in its extensive findings and opinion. It is an argument which gives rise to intricate questions of policy

construction. For example, Preferred argues that the "Hazard Defined" paragraph of the Garage endorsement operates to exclude this particular automobile from coverage. Coshow replies that any such limitation is invalid under California's financial responsibility law, Vehicle Code section 16451.

There is also the question of whether, in any event, section 16451 assures coverage of Martell in addition to Newell who was actually "using" the Joy automobile. Cal-Farm paid out nothing on behalf of Newell, and Newell is not a party to this action.

We perceive no excuse for Coshow's failure to make his Garage endorsement argument in the trial court, if the argument has merit. He was fully aware of the Garage endorsement not only because it was an attachment to the "true" policy which was in his possession, but because his attention had been specifically called to the endorsement in a letter which Preferred's Claims Manager, Richard R. Neal, wrote to Coshow on April 9, 1964, before the time for the appeal in the Martell action had expired.

As a matter of fact, Neal was Preferred's principal witness at the trial herein. He was subjected to intensive cross-examination, most of it related to his knowledge of the policies, yet he was not questioned concerning his reference to the Garage endorsement in his letter of April 9, 1964. Even after the district court rendered its decision, conscientiously dealing with every issue Coshow presented in that court, Coshow did not attempt to call that court's attention to this Garage endorsement issue by a motion for a new trial or any other means.

As indicated above, the Garage endorsement issue is extremely complex. We could not decide it with assurance on the present state of the record. Factual issues seem to be presented in connection with Paragraph A of this endorsement, entitled "Hazard Defined." This court will not ordinarily reverse on grounds not properly presented to the trial judge. Simpson v. Union Oil Co., 411 F.2d 897, 905 (9th Cir. 1969); United States v. Hudspeth, 384 F.2d 683, 687 (9th Cir. 1967); Stephens v. Arrow Lumber Co., 354 F.2d 732, 734 (9th Cir. 1966); Chi Sheng Liu v. Holton, 297 F.2d 740, 744 (9th Cir. 1961).

Nor, under the circumstances, do we believe we are called upon to remand this case to the district court for consideration of the issue. The district court adequately performed its duty when it gave full consideration of the issues which were presented to it and rendered a twelve-page opinion.

Coshow presents no issue on this appeal save that of the Garage endorsement, which issue we decline to consider. It is time for this protracted litigation to come to an end.

Affirmed.