LIFE INSURANCE CO. OF NORTH
AMERICA et al.,
Petitioners-Appellants,

v.

Martha Ellen REICHARDT, etc.,
Respondent-Appellee.

Martha Ellen REICHARDT et al.,
Plaintiffs-Appellees,

v.

Wesley J. KINDER, Defendant-Appellant.

Nos. 75–3031, 75–3032.

United States Court of Appeals,
Ninth Circuit.

Jan. 11, 1979.

Rehearing and Rehearing En Banc
Denied March 12, 1979.

Guy O. Kornblum of Pettit, Evers & Martin, Jack G. Knebel and Robert H. Daniels of McCutchen, Doyle, Brown and Enersen (argued), San Francisco, Cal., for petitioners-appellants.

Robert J. Reinstein, Atty. Dept. of Justice, Washington, D. C., Mary Dunlap, Atty. of Equal Rights Advocates, Inc. (argued), for Martha Ellen Reichardt et al.

Mervin R. Samuel, Deputy Atty. Gen. (argued), San Francisco, Cal., for defendant-appellant.

Before BROWNING and WRIGHT, Circuit Judges, and KUNZIG, Judge of the United States Court of Claims.

EUGENE A. WRIGHT, Circuit Judge.

Reichardt, a resident of California, sued on behalf of herself and others similarly situated alleging unlawful discrimination in the sale of disability insurance. She complained that disability policies sold by the defendant insurance companies and approved by the California State Insurance Commissioner discriminate against women who cannot obtain coverage for as long a period, must wait longer for benefits, and are charged higher premiums than are men. She alleged that these differences were actuarially not justified.

She alleged four causes of action:

(1) that the Commissioner, by approving the forms of disability policies, has deprived her and her class of their civil rights in violation of 42 U.S.C. § 1983;[1]

(2) that the Commissioner, by the same acts, has effected a deprivation of rights in violation of California law;

(3) that the named insurers and the class they represent have conspired to deprive her and her class of civil rights in violation of 42 U.S.C. §§ 1983, 1985(3);[2] and

---

1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1970).

2. If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right

(4) that the Life Insurance Company of North America (LINA) inflicted emotional distress upon her by its discriminatory policy.

The district court granted defendants' Rule 12(b)(6) motion as to the § 1983 claim against the insurance companies and the emotional distress claim against LINA, but denied it as to the § 1983 claim against the insurance commissioner and the § 1985(3) claim against the insurance companies. The district court certified interlocutory appeals from its refusal to dismiss the latter two claims. We accepted jurisdiction pursuant to 28 U.S.C. § 1292(b). Reichardt has not appealed the dismissal of her other claims.[3]

## I.

## SECTION 1983 CLAIM AGAINST THE INSURANCE COMMISSIONER

■ To state a claim under § 1983 the challenged action must have been taken "under color of state law." The district court found the Commissioner's approval of the discriminatory insurance policy forms sufficient state action.

The Supreme Court has declared that "where the impetus for the discrimination is private, the State must have 'significantly involved itself with [the] invidious discriminations.'" *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972) (quoting in part *Reitman v. Mulkey*, 387 U.S. 369, 380, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967)).

Accordingly, the Court has found significant involvement when a state encouraged private discrimination, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); commanded the discrimination, *Lombard v. Louisiana*, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963); *Peterson v. Greenville*, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963); heavily subsidized the discriminator, *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (symbiotic relationship); or enforced the discrimination, *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

Courts have refused to find state action, however, where a state merely regulates the business conduct, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Watkins v. Mercy Medical Center*, 520 F.2d 894, 896 (9th Cir. 1975); *Martin v. PNB*, 441 F.2d 1116 (9th Cir. 1971); extends ordinary government benefits to the discriminator, *Moose Lodge*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627; licenses the discriminator, *id.*; *Szijarto v. Legeman*, 466 F.2d 864 (9th Cir. 1972); or fails to disapprove the discriminatory practice, *Jackson*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477; *Moose Lodge*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627.

■ Determining whether there has been sufficient state action to give rise to a claim under § 1983 requires a sifting of the circumstances of each case. *Wilmington Parking Authority*, 365 U.S. at 722, 81 S.Ct. 856.[4] We must determine here the extent

or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages . . . .

42 U.S. § 1985(3) (1970).

**3.** After the district court's opinion, Reichardt filed an amended complaint asserting her § 1983 claim only against the Insurance Commissioner.

**4.** In *Melara v. Kennedy*, 541 F.2d 802, 805 (9th Cir. 1976), we enumerated certain relevant inquiries:

While there is no specific formula for defining state action, there are certain questions the answers to which are worthy of consideration in determining whether a state is "significantly involved" in the statutorily authorized private conduct. What is the source of authority for the private individual action? Is regulation of the private conduct by statute so pervasive as to entangle the state in the activity? Is the state a joint participant in the activity or are mutual benefits conferred between the state and the private actor? What relationship exists between the property involved and the underlying debt? Does a contract exist which makes provision for the challenged activity? Has there been a delegation of what has traditionally been a state function through the enactment of the statute?

to which the state has become involved with the insurance companies' alleged discrimination as a result of its Insurance Commissioner's approval of the form of the alleged discriminatory policies.[5]

Insurers doing business in California must submit their policy forms to the Insurance Commissioner for approval. Their policies may be issued only on his approval or his inaction for 30 days.[6]

The Commissioner's act of approving a form of policy does not necessarily result in discrimination. The state does not command the discrimination. *See Moose Lodge*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627. The record suggests that the Commissioner's approval was pro forma as in *Jackson*, 419 U.S. at 357, 95 S.Ct. 449; rather than an approval after full investigation of matters as in *Public Utilities Comm'n v. Pollak*. The Commissioner has placed no official imprimatur on the practice of which Reichardt complains.

■■■ Mere state action is insufficient to support a § 1983 cause of action. There must be a sufficient nexus between the state action and the private discrimination. Here the nexus is insufficient. The private carriers decided whether and to whom such policies would issue. We find insufficient state action to state a claim under § 1983.

## II.

### SECTION 1985(3) CLAIM AGAINST THE INSURANCE COMPANIES

In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court enumerated the elements of a cause of action under § 1985(3):

> a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Id.* at 102–03, 91 S.Ct. at 1798–99.

We shall first determine whether the statutory elements of the § 1985(3) cause of action have been satisfied. We then discuss the propriety of the parties' arguments regarding congressional power to regulate the conduct sought to be proscribed here.

### (a) *Statutory Elements of § 1985(3).*

Reichardt's complaint sets forth enough facts to support her allegation of a conspiracy, satisfying the first element sufficiently to survive a motion to dismiss for failure to state a claim. Similarly, the issuance of the alleged discriminatory policy is enough to satisfy the third and fourth elements. Our analysis focuses then on the second element of the § 1985(3) claim which, in turn, has two requirements: (1) violation of a protected right, and (2) an invidiously discrimi-

---

To the extent relevant here, these inquiries have been considered.

5. California's extensive regulation of insurance companies, standing alone, is insufficient state involvement. *Cf. Jackson*, 419 U.S. at 350, 95 S.Ct. 449; *Public Utilities Comm'n v. Pollak*, 343 U.S. at 462, 72 S.Ct. 813.

6. A disability policy shall not be issued or delivered to any person in this State until:
   (a) A copy of the form thereof and, if more than one class of risks is written, of the classification of risks, and the premium rates pertaining thereto are filed with the Commissioner,

(b) Either:
(1) Thirty days expires without notice from the Commissioner after such copy is filed, or,
(2) The Commissioner gives his written approval prior to that time.
Cal.Ins.Code § 10290 (West 1972).
   If the Commissioner notifies the insurer, in writing, that the filed form does not comply with the requirements of law, specifying the reasons for his opinion, it is unlawful thereafter for any such insurer to issue any policy in such form.
Cal.Ins.Code § 10291 (West 1972).

natory class-based animus motivating the violation.

### (1) *Violation of a protected right.*

■ *Griffin* made it unmistakably clear that § 1985(3) was intended to reach private conspiracies: "It is thus evident that all indicators—text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies." [7] *Griffin*, 403 U.S. at 101, 91 S.Ct. at 1798. Although the scope of prohibited activity has thus been expanded to include the actors here, the scope of rights protected from their private conduct by § 1985(3) is subject to much uncertainty.

■ The *Griffin* Court concluded that § 1985(3) protects the right to be free from racial discrimination, the right of interstate travel, and the right to equal protection of the laws. The Court did not articulate what might constitute a deprivation of equal protection by private persons. *Griffin*, 403 U.S. at 97, 91 S.Ct. 1790.

In *Lopez v. Arrowhead Ranches*, 523 F.2d 924, 926 (9th Cir. 1975), this court explained *Griffin* as creating a cause of action for any tortious interference with a legally protected right if motivated by the requisite class-based animus:

[T]he *[Griffin]* Court, recognizing that the statutory language, taken literally, might be construed to give a claim for every conspiratorial tortious interference with a legally protected interest (the equal status being to be protected by law from *all intrusions on legal rights*), limited the statute's application to conform to the drafters' perceived intent. (Emphasis added.)

"The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. See the remarks of Representatives Willard and Shellabarger, quoted *supra*, at 100. The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all."

*Id.* at 926–27, quoting *Griffin*, 403 U.S. at 102, 91 S.Ct. 1790 (footnotes omitted) (emphasis in original).

Following *Griffin* and *Lopez*, we perceive the first requirement of this second element of § 1985(3) to require the deprivation of any legally protected right. Other courts have reached a similar conclusion.

The Fifth Circuit, sitting en banc, interpreted the second element to require an independent illegality [8] (*i. e.*, one independent of § 1985), accompanied by the requisite invidiously discriminatory animus. *McLellan v. Mississippi Power and Light Co.*, 545 F.2d 919 (5th Cir. 1977) (rehearing en banc). It based its interpretation on the *Griffin* Court's reference, 403 U.S. at 97, 91 S.Ct. 1790, to *United States v. Harris*, 106

---

**7.** In *Sykes v. California Dep't of Motor Vehicles*, 497 F.2d 197 (9th Cir. 1974), another panel of this court concluded that a cause of action under § 1985 requires "that the defendants acted under color of state law and authority." *Id.* at 200 (citing *Griffin v. Breckenridge*, 403 U.S. 88 (1971)). Although we cannot dismiss this language as *dictum*, we note that subsequent decisions of this court have not followed *Sykes*. See *Briley v. State of California*, 564 F.2d 849, 858–59 (9th Cir. 1977); *Phillips v. International Assoc. of Bridge, Structural and Ornamental Iron Workers, Local 118*, 556 F.2d 939, 941 n.1 (9th Cir. 1977).

These later cases amply demonstrate that *Sykes'* "under color of state law and authority" requirement for a § 1985 cause of action is no longer the law of this circuit, if it ever was.

**8.** The Fifth Circuit attempted to reconcile *Lopez's* "violation of a legal right" requirement with its own requirement of an "independent illegality": "[T]he legal right referred to in those instances is the right of every person not to be victimized by another's *illegal* behavior." *McLellan*, 545 F.2d at 927 (emphasis in original). Regardless of the merit of this conciliation, we adhere to the reasoning and language of *Lopez*.

U.S. 629, 643, 1 S.Ct. 601, 612, 27 L.Ed. 290 (1883),[9] which noted:

> A private person cannot make constitutions or laws, nor can he with authority construe them, nor can he administer or execute them. The only way, therefore, in which one private person can deprive another of the equal protection of the laws is by the commission of some offense against the laws which protect the rights of persons, as by theft, burglary, arson, libel, assault, or murder.

The Seventh Circuit, in *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972), concluded that § 1985(3) required deprivation of a legal right and a class-based invidiously discriminatory animus. It concluded, however, that some state involvement was requisite to finding a right under the Fourteenth Amendment to be free of private discrimination. Its approach is consistent with that utilized both by the Fifth Circuit and this court, which implicitly recognizes the remedial character of § 1985(3), and that the section itself confers no substantive rights. Finding no Fourteenth Amendment right to be free from private deprivations of equal protection, the *Dombrowski*

court concluded the facts alleged there created no § 1985(3) cause of action.[10]

The Eighth Circuit, in contrast, has concluded that § 1985 confers the substantive right to be free from private discrimination under the Fourteenth Amendment.[11] *Action v. Gannon*, 450 F.2d 1227, 1234–35 (8th Cir. 1971). Sitting en banc, that court confused the two-pronged analysis of *Griffin*, which first requires the identification of a right protected against private infringement and then requires the identification of a source of congressional power to prohibit such private conduct. It reasoned that § 1985(3) extended the Fourteenth Amendment right to equal protection by the states (including the incorporated First Amendment right to freedom of religion) to a right of equal treatment under the Fourteenth Amendment by private persons, and concluded that § 5 of the Fourteenth Amendment authorized such congressional power. *Cf. Bellamy v. Mason's Stores, Inc.*, 508 F.2d 504, 507 (4th Cir. 1974).

California's Civil Rights Act[12] prohibits the private discrimination alleged here.[13] Reichardt thus has a state right or entitle-

---

**9.** *Cf.* The Civil Rights Cases, 109 U.S. 3, 17, 3 S.Ct. 18, 25, 27 L.Ed. 835 (1883):

> [C]ivil rights, such as are guaranteed by the constitution against State aggression, cannot be impaired by the wrongful acts of individuals, unsupported by state authority in the shape of laws, customs or judicial or executive proceedings. The wrongful act of an individual, unsupported by any such authority, is simply a private wrong, or a crime of that individual; an invasion of the rights of the injured party, it is true, whether they affect his person, his property or his reputation; but if not sanctioned in some way by the state, or not done under state authority, his rights remain in full force, and may presumably be vindicated by resort to the laws of the state for redress. An individual cannot deprive a man of his right to vote, to hold property, to buy and to sell, to sue in the courts or to be a witness or a juror; he may, by force or fraud, interfere with the enjoyment of the right in a particular case; he may commit an assault against the person, or commit murder, or use ruffian violence at the polls, or slander the good name of a fellow-citizen; but unless protected in these wrongful acts by some shield of state law or state authority, he cannot destroy or injure the right; he will only render himself amenable

to satisfaction or punishment; and amenable therefor to the laws of the state where the wrongful acts are committed.

**10.** *See also Bellamy v. Mason's Stores, Inc., (Richmond)*, 508 F.2d 504, 506 (4th Cir. 1974).

**11.** We noted this analysis without comment in *Arnold v. Tiffany*, 487 F.2d 216, 219 n.3 (9th Cir. 1973).

**12.** All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. Cal.Civ.Code § 51 (West Supp.1978).

**13.** California also punishes the discriminatory conduct alleged here as a misdemeanor:

> Any incorporated insurer admitted for disability insurance and any agent of such insurer, that makes or permits any discrimination between insureds of the same class in any manner whatsoever with relation to such insurance, is guilty of a misdemeanor. Cal.Ins.Code § 10401 (West 1972).

ment to be free from the alleged private discrimination.

██ The insurance companies would have us construe § 1985(3) to be limited to deprivations of federal rights, as opposed to any legal rights or entitlements (including state conferred rights). We believe such a narrow construction is inconsistent with the drafters' purpose and irreconcilable with the interpretation since accorded § 1985 by the Supreme Court.[14] Violations of state conferred rights and privileges are sufficient to constitute a deprivation of "equal protection of the laws." *Harrison v. Brooks*, 446 F.2d 404 (1st Cir. 1971) (zoning law infringement).

### (2) *Invidiously discriminatory class-based animus.*

Reichardt brought this action on behalf of herself and a clearly defined class: similarly situated women purchasers of disability insurance in California. Although the *Griffin* Court did not consider whether a class other than one racially-based would be sufficient under § 1985(3), we conclude that women purchasers of disability insurance are a sufficient class.

Section 1985's drafters clearly intended to protect groups other than oppressed southern blacks. The Congressional debates evinced concern for all groups subject to the organized lawlessness of the Ku Klux Klan, including all Unionists, Republicans, and certain religious groups.[15]

██ Courts construing § 1985(3) have not limited its protection to racial or otherwise suspect classifications.[16] *Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975) (political opponents are a sufficient class); *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973) (supporters of a political candidate are a sufficient class); *Azar v. Conley*, 456 F.2d 1382 (6th Cir. 1972) (a single family is a sufficient class). *See also Harrison v. Brooks*, 446 F.2d 404 (1st Cir. 1971). Reichardt's allegation that an invidiously discriminatory animus was the motivating force behind the disparate policy terms offered to women is thus sufficient to survive a motion to dismiss for failure to state a claim.

### (b) *Congressional Power to Regulate This Private Conduct.*

Defendant insurance companies argue that § 1985(3) as applied to the facts of this case is beyond the power of Congress. Reichardt argues that both the Commerce Clause and section 5 of the Fourteenth Amendment authorize Congress to reach the alleged discriminatory practices.

This issue was not raised or decided below. There is no reference to it in the motion to dismiss or for summary judgment. It is not identified among the issues listed in the district court's opinion nor otherwise referred to in the opinion. It is not among the issues as to which certification was sought and granted.

---

**14.** An earlier version of the original bill enumerated specific crimes traditionally left to the exclusive jurisdiction of the states, *e. g.*, murder, manslaughter, robbery, assault, and battery. *See* Cong.Globe, 42d Cong., 1st Sess., App. 188 (1871). The final version substituted the *equal* protection and *equal* privileges and immunities language which the Supreme Court has construed as a motivation element of the offense, the only element preventing the imposition, under the terms of the statute, of a general federal tort law. *See Griffin*, 403 U.S. at 102, 91 S.Ct. 1790.

**15.** *See* Cong.Globe, 42d Cong., 1st Sess., at 567, 695–96 (1871) (remarks of Sen. Edmunds). *See also id.*, at 426 (remarks of Rep. McKee); *id.*, at 437–39 (remarks of Rep. Cobb).

**16.** It is now well established that gender-based classifications may result in invidious discrimi-

nation. *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (state's 3.2% beer statute invidiously discriminates against males); *Frontiero v. Richardson, Secretary of Defense*, 411 U.S. 677, 688, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (discrimination against woman in military service claiming increased benefits for dependent spouse invidious; four Justices conclude that "sex" is a "suspect" class); *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (gender-based discrimination in the appointment of administrators); *Novotny v. Great American Fed. Savings & Loan Ass'n*, 584 F.2d 1235 (3rd Cir. 1978) (en banc), cert. granted, 47 U.S.L.W. 3450 (Jan. 9, 1979) (discharge of male executive who opposed plan to deprive women of equal employment rights).

We decline to reverse the district judge upon a ground not submitted to him and upon which he has had no opportunity to pass. *Preferred Insurance Exchange v. Coshow*, 444 F.2d 362, 365 (9th Cir. 1971). Such forbearance is particularly appropriate where the appeal is interlocutory and the issue is not among those certified by the district court. *Stern v. U. S. Gypsum Inc.*, 547 F.2d 1329, 1333–34 (7th Cir. 1977).

Moreover, few propositions are better established than that constitutional adjudication should be avoided wherever possible. *Bowen v. United States*, 422 U.S. 916, 920, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975); *Ashwander v. TVA*, 297 U.S. 288, 345–48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

If the defendant insurance companies prevail in a trial on the merits, the constitutional issue need never be reached. If Reichardt prevails, the constitutional issue will be subject to review on appeal from the final judgment, with the advantages of a full record.

The case is remanded to the district court with instructions to dismiss the claim against the Insurance Commissioner under § 1983. The district court's order is otherwise affirmed.