**Martha Ellen REICHARDT, Individually and on behalf of all other women similarly situated, Plaintiff,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA et al., Defendants.**

**No. C–74–1179 WHO.**

United States District Court,
N. D. California.

Aug. 22, 1979.

---

Law Offices of John Wynne Herron, John Wynne Herron, Geoffrey B. Stearns, Josef D. Cooper (argued), Kirk A. McKinney, Joan M. Graff, San Francisco, Cal., for plaintiff.

McCutchen, Doyle, Brown & Enersen, Arthur R. Albrecht, Michael J. Plishner, Jack G. Knebel and Robert H. Daniels (argued), San Francisco, Cal., for Life Insurance Co. of North America.

Girvan Peck, Kelley Guest, Linda E. Shostak, Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., for New York Life Ins. Co.

Pillsbury, Madison & Sutro, Harlan M. Richter, Bernard Zimmerman, William Dillingham, San Francisco, Cal., for The Equitable Life Assurance Society of U. S.

Pettit, Evers & Martin, Guy O. Kornblum, Charles S. Loughran, Donald F. Miles, Andrew N. Chang, Thomas M. Herlihy, San Francisco, Cal., for Connecticut General Life Ins. Co., The Hartford Ins. Group, John Hancock Mutual Life Ins. Co. and Washington National Life Ins. Co.

Knight, Boland & Riordan, Richard J. Kilmartin, John P. Lynch, San Francisco, Cal., for Metropolitan Life Ins. Co.

## OPINION

ORRICK, District Judge.

The narrow question posited by this motion to dismiss made pursuant to Rule 12(b) of the Federal Rules of Civil Procedure is whether this Court has subject matter jurisdiction over a cause of action brought against certain insurance companies under 42 U.S.C. § 1985(3) (the surviving version of § 2 of the Civil Rights Act of 1871, known as the Ku Klux Klan Act) in which it is simply alleged that plaintiff's Fourteenth Amendment right to have state laws equally enforced were violated by defendants' alleged conspiracy to secure state approval of certain life insurance policies which allegedly violate the California Civil Rights Act. This Court holds it lacks subject matter jurisdiction over such a claim and, accordingly, dismisses this action.

### I

### A

On June 3, 1974, plaintiff, Martha Ellen Reichardt, filed this action on behalf of herself and a class of women alleging they had been discriminated against in purchasing disability policies. She named as defendants the Insurance Commissioner of the State of California ("Commissioner"), the Life Insurance Company of North America ("LINA"), which is the company that sold plaintiff her disability policy, seven other named insurance companies, and a purported class of defendant insurance companies. Plaintiff claimed that the disability insurance policies approved by the Commissioner and subsequently sold by defendant companies discriminated against women in that (1) women cannot obtain coverage for as long a period of disability as can men; (2) women must wait a longer period of time than men for benefit payments to commence once a disability has occurred, and (3) women are subject to a lower ceiling on monthly benefits than are similarly situated men. Plaintiff alleged that these differences in coverage are based on sex and are not justified by actuarial differences in the insurability of men and women. *Cf. Stern v. Massachusetts Indemnity & Life Insurance Co.*, 365 F.Supp. 433 (E.D.Pa.1973).

Plaintiff alleged four causes of action invoking the jurisdiction of the Court by alleging deprivation of her civil rights and those of the class she purported to rep-

resent under 42 U.S.C. § 1983 [1] and a conspiracy to deprive her and the putative class of their civil rights under 42 U.S.C. § 1985(3).[2] In the first cause of action plaintiff claimed that the Commissioner, by approving the insurance policies as he is bound to do before the policy can be issued under the California Insurance Code,[3] deprived plaintiff and her putative class of their civil rights in violation of 42 U.S.C. § 1983. In the second cause of action plaintiff raised the pendent state claim that the Commissioner violated her state constitutional rights by approving allegedly discriminatory policies.

In the third cause of action, directed against the eight named insurance companies and the putative defendant class, plaintiff claimed that the insurance companies deprived her of her civil rights in violation of 42 U.S.C. § 1983 by offering discriminatory insurance coverage and that they conspired to violate her civil rights in violation of 42 U.S.C. § 1985(3).

In the fourth cause of action, directed solely against LINA, plaintiff claimed that LINA intentionally inflicted emotional distress on her by selling her a discriminatory policy.

On April 30, 1975, the Court entered its order denying motions to dismiss the § 1983 claim and the pendent state claim against the Commissioner and the §§ 1983 and 1985(3) claims against the insurance compa-

nies. The Court granted the motion for summary judgment based on emotional distress against LINA and then certified an interlocutory appeal to the Court of Appeals from its refusal to dismiss the § 1983 claim against the Commissioner and the § 1985(3) claim against the insurance companies. On January 11, 1979, the Court of Appeals remanded the case to this Court with instructions to dismiss the § 1983 claim against the Commissioner, but otherwise affirmed this Court's order.

Plaintiff has since abandoned her § 1983 claim that the insurance companies deprived her of her civil rights by offering discriminatory insurance coverage. Thus, there remains only plaintiff's § 1985(3) claim against the insurance companies that they conspired to violate the civil rights granted to her by the California Civil Rights Act (the "Act").[4]

### B

In disposing of the insurance companies' argument that plaintiff's § 1985(3) cause of action against them should be dismissed, the Court of Appeals noted that plaintiff's cause of action met the requirements of elements one, three, and four of the four elements held by Justice Stewart in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), to be necessary to establish a cause of action under § 1985(3).[5] The Court of Appeals found the second element contained two requirements, name-

---

**1.** 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

**2.** 42 U.S.C. § 1985(3) provides in pertinent part:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities * * * [and] if one or more persons engaged therein do, or

cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages."

The 1976 edition of the United States Code designates the identical provision as "§ 1985(c)."

**3.** California Insurance Code § 10290.

**4.** California Civil Code §§ 51 *et seq.*

**5.** *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 1799, 29 L.Ed.2d 338 (1971):

"[A] complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2)

ly, the violation of a protected right, and an invidiously discriminating class-based animus motivating the violation. The Court of Appeals held that the plaintiffs could rely on the Act as the source of a "protected right," [6] and that plaintiff's allegation that an invidiously discriminating animus was the motivating force behind the disparate policy terms applied to women was sufficient to survive a motion to dismiss for failure to state a claim.

Because the issue had not been raised before, or decided initially by, this Court, the Court of Appeals declined to consider defendants' argument that § 1985(3), as applied to this case, is beyond the power of Congress. In the opinion accompanying the remand, the court noted:

> "If the defendant insurance companies prevail in a trial on the merits, the constitutional issue need never be reached. If Reichardt prevails, the constitutional issue will be subject to review on appeal from the final judgment, with the advantages of a full record." *Life Insurance Co. of North America v. Reichardt*, 591 F.2d 499, 506 (9th Cir. 1979).

'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.' "

**6.** Contrary to the government's assertion, the Court of Appeals' decision was not premised on a finding that plaintiff had adequately alleged the violation of a federal substantive right by defendants, but rather was premised on a finding that plaintiffs could rely on a state statute as the source of a protected "right." It was only subsequent to the issuance of the Court of Appeals' decision in this case (and the Supreme Court's decision in *Novotny*) that plaintiff complained about "unequal enforcement" of the Act.

**7.** Although the Ninth Circuit's holding is presently the law of the case, such a view has little support in precedent. In *Griffin*, the defendants were alleged to have beaten murdered Blacks, whom they believed to be civil rights workers, while the Blacks were traveling

This Court, however, having reviewed the relevant cases decided since the Court of Appeals remanded, as well as the ten briefs (including the sixty-seven pages of *amicus curiae* briefs and appendices thereto belatedly filed by the United States), pleadings, affidavits, depositions, and transcripts of the two lengthy oral arguments before it, is now convinced that plaintiff has not and cannot, in the context of this case, state a claim for relief against the defendant insurance companies based on 42 U.S.C. § 1985(3).

II

Subsequent to the decision of the Court of Appeals in this case, the Supreme Court handed down its decision in *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). While the issue addressed here was not expressly before the Supreme Court, since there the alleged source of substantive rights was a federal statute,[7] this Court is convinced, based on an examination of the language contained in each of the four sep-

through Georgia. The sources of substantive rights relied upon by the Supreme Court were the constitutional right to travel interstate and the Thirteenth Amendment right to be free from the badges of slavery. None of the cases relied upon by the Circuit expressly holds that state-created rights can form the basis of a Section 1985(3) action. *Lopez v. Arrowhead Ranches*, 523 F.2d 924 (9th Cir. 1975) (substantive rights found in Title VII, federal minimum wage law, Social Security Act and Immigration Act); *Harrison v. Brooks*, 446 F.2d 404 (1st Cir. 1971) (substantive right was straightforward Fourteenth Amendment: a municipality was alleged to have applied zoning laws in a discriminatory manner); *McLellan v. Mississippi Power & Light*, 545 F.2d 919 (5th Cir. 1977) (although the court appeared to assume that state-created rights could form the basis for a violation, plaintiff had attempted to state only violations of federal rights); *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972) (substantive rights derived from Fourteenth Amendment; moreover, the court identified only *three* sources of substantive rights which had been judicially identified as appropriate in 1985 actions: Thirteenth Amendment, Fourteenth Amendment, and constitutional right to travel interstate).

arate opinions filed in that case, that the Supreme Court views § 1985 as a device creating remedies for violations of *federal* rights only as distinguished from *state* rights.[8] In this Court's view these four opinions, set out in relevant part in the footnote, constitute a supervening change in the law announced in the concurring opinions filed in *United States v. Guest*, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1965), a change which, assuming *Guest* is applicable here, is authoritative upon higher and lower courts alike. *Cf.* 1B J. Moore, Federal Practice § 0.404(10) at 575–76.

Plaintiff, however, is not arguing that a violation of her rights under the Act is a violation of § 1985. She is arguing that her rights under § 1985(3) were violated by a conspiracy among the defendants to violate her Fourteenth Amendment rights by securing unequal enforcement of the Act by the Commissioner.

### A

The *Griffin* court adopted a two-prong analysis in the consideration of § 1985(3)

actions, "which first requires the identification of a right protected against private infringement and then requires the identification of a source of congressional power to prohibit such private conduct." *Life Insurance Co. of North America v. Reichardt, supra,* 591 F.2d at 504. It is the second task, the identification of a source of congressional power, on which this Court's investigation centers. Plaintiff proposes that § 5 of the Fourteenth Amendment is a source of such power. That section provides:

"The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

In establishing standards for review of congressional legislation enacted under this provision, the Supreme Court in *Katzenbach v. Morgan*, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966), drew upon the Necessary And Proper Clause of Article I:

"Whatever legislation is appropriate, that is, adapted to carry out the objects the

---

**8.** *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979):

"Section 1985(c), by contrast, *creates* no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section." *Id.* at 376, 99 S.Ct. at 2351.

\* \* \* \* \* \*

"The Court's specific holding is that § 1985(c) may not be invoked to redress violations of Title VII. The broader issue argued to us in this case was whether this Civil War era remedial statute, providing no substantive rights itself, was intended to provide a remedy generally for the violation of subsequently created statutory rights. For essentially the reasons suggested by MR. JUSTICE STEVENS, I would hold that § 1985(c) should *not* be so construed, and that its reach is limited to conspiracies to violate those fundamental rights derived from the Constitution." *Id.* (Powell, J., concurring).

\* \* \* \* \* \*

"Somewhat different language was used by Congress in describing the substantive rights encompassed within the two provisions: § 1 of the 1871 Act, the predecessor to § 1983,

referred to 'rights, privileges, or immunities secured by the Constitution of the United States,' whereas § 2, the predecessor to § 1985(c), referred to 'equal protection of the laws' and 'equal privileges and immunities under the laws.' The import of the language, however, as well as the relevant legislative history, suggests that the Congress which enacted both provisions was concerned with providing federal remedies for deprivations of rights protected by the Constitution and, in particular, the newly ratified Fourteenth Amendment." *Id.* at ——, 99 S.Ct. at 2354 (Stevens, J., concurring) (footnote omitted).

\* \* \* \* \* \*

"Because § 1985(c) provides a remedy for *any person* injured as a result of deprivation of a substantive federal right, it must be seen as itself creating rights in persons other than those whom the underlying federal right extends.

\* \* \* \* \* \*

In enacting § 1985(c), Congress specifically contemplated that persons injured by private conspiracies to deny the federal rights of others could redress their injuries, quite apart from any redress by those who are the object of the conspiracy. *Griffin v. Breckenridge*, 403 U.S. 88, 103 [91 S.Ct. 1790, 1798, 29 L.Ed.2d 338] (1971)." *Id.* at 390, 99 S.Ct. at 2358 (White, J., dissenting).

amendments have in view, whatever tends to enforce submission to the prohibitions they contain, and to secure to all persons the enjoyment of perfect equality of civil rights and the equal protection of the laws against State denial or invasion, if not prohibited, is brought within the domain of congressional power." *Id.* at 650, 86 S.Ct. at 1723.

The essential issue raised by the parties to this motion is whether Congress, pursuant to § 5, may constitutionally prohibit the private conspiratorial acts which form the basis for the complaint. Defendants argue that because the Fourteenth Amendment has traditionally been viewed to prohibit only state action which denies equal protection (or other rights), Congress cannot, under the guise of merely enforcing the Fourteenth Amendment, prohibit purely private conduct. In other words, according to defendants, if § 5 provides the source of Congressional authority, the legislation can only reach conduct which itself violates the Fourteenth Amendment. This view has been adopted by a variety of courts in decisions subsequent to *Griffin. Murphy v. Mt. Carmel High School*, 543 F.2d 1189 (7th Cir. 1976); *Baer v. Baer*, 450 F.Supp. 481 (N.D. Cal.1978); *Weiss v. Willow Tree Civic Ass'n*, 467 F.Supp. 803 (S.D.N.Y.1979). Plaintiffs responded, relying upon *United States v. Guest, supra*, that Congress does possess authority to enforce the Fourteenth Amendment directly against private individuals whose actions *interfere with* the exercise of Fourteenth Amendment rights.

The debate thus focuses upon *Guest*, the Supreme Court's most liberal exegesis of congressional authority under § 5 of the Fourteenth Amendment. In *Guest*, private, white citizens were indicted under 18 U.S.C. § 241, the criminal analogue to § 1985(3), for interfering with the use of public facilities by black citizens through the device of making false criminal complaints, etc. Since the action of these defendants was not "state action," the issue was whether or not Congress could constitutionally punish such conduct pursuant to § 5 of the Fourteenth Amendment. Justice Stewart, writing for the Court, avoided the constitutional question by holding that the indictment contained sufficient allegations of "state action" to make out a true violation of the Fourteenth Amendment. However, six justices suggested that § 5 gave Congress power to reach private conspiracies which, although not strictly Fourteenth Amendment violations in themselves (because they did not amount to state action), interfered with the exercise of certain Fourteenth Amendment rights. Hence, Justice Clark (with whom Justices Fortas and Black concurred) stated:

"The Court carves out of its opinion the question of the power of Congress, under § 5 of the Fourteenth Amendment, to enact legislation implementing the Equal Protection Clause or any other provision of the Fourteenth Amendment. The Court's interpretation of the indictment clearly avoids the question whether Congress, by appropriate legislation, has the power to punish private conspiracies that interfere with Fourteenth Amendment rights, such as the right to utilize public facilities. My Brother Brennan, however, says that the Court's disposition constitutes an acceptance of appellees' aforesaid contention as to § 241. Some of his language further suggests that the Court indicates *sub silentio* that Congress does not have the power to outlaw such conspiracies. Although the Court specifically rejects any such connotation, *ante*, p. 755, it is, I believe, both appropriate and necessary under the circumstances here to say that there now can be no doubt that the specific language of § 5 empowers the Congress to enact laws punishing all conspiracies—with or without state action—that interfere with Fourteenth Amendment rights." *United States v. Guest, supra*, 383 U.S. at 762, 86 S.Ct. at 1180.

Justice Brennan (with whom Chief Justice Warren and Justice Douglas concurred), placing the concept on a broader footing, found that § 5 permitted Congress to prohibit *not only* conduct which itself violated the Fourteenth Amendment, but also conduct which, though not state action, inter-

fered with the state's obligation to carry out a Fourteenth Amendment duty. He wrote:

"A majority of the members of the Court expresses the view today that § 5 empowers Congress to enact laws punishing *all* conspiracies to interfere with the exercise of Fourteenth Amendment rights, whether or not state officers or others acting under the color of state law are implicated in the conspiracy. Although the Fourteenth Amendment itself, according to established doctrine, 'speaks to the State or to those acting under the color of its authority,' legislation protecting rights created by that Amendment, such as the right to equal utilization of state facilities, need not be confined to punishing conspiracies in which state officers participate. Rather, § 5 authorizes Congress to make laws that it concludes are reasonably necessary to protect a right created by and arising under that Amendment; and Congress is thus fully empowered to determine that punishment of private conspiracies interfering with the exercise of such a right is necessary to its full protection." *Id.* at 782, 86 S.Ct. at 1191 (footnote omitted).

In *Guest* the duty interfered with was the state's duty to provide equal access to public facilities.

*Guest* is acknowledged as the high water mark of Supreme Court expansion of congressional power under § 5. Cox, *The Supreme Court 1965 Term: Foreward*, 80 Harv.L.Rev. 91 (1966). Cox reads the case as permitting federal legislation aimed at private conduct when it interferes with a state's affirmative duty to protect Fourteenth Amendment rights. A state has such a duty, for example, when it chooses to make public facilities available; it must make them available to all on a nondiscriminatory basis.

■ The instant case fails to fall within the broad outlines of *Guest* because the private conduct here (offering of insurance policies which discriminate against women) neither constitutes a violation of the Fourteenth Amendment nor interferes with any discernible state duty to carry out Fourteenth Amendment obligations. The Ninth Circuit has held there is no violation of equal protection, since the state is not involved—indeed, the only violation found to exist by the Circuit is one of state-created rights. Nor does the state have a Fourteenth Amendment obligation to provide disability insurance on a nondiscriminatory basis, for it has no duty (nor has it undertaken) to provide insurance at all. In short, there is no nexus whatsoever between defendants' conduct and plaintiff's enjoyment of rights to equal protection which would justify Congressional action in this area.

Plaintiff's attempt to create such a nexus fails. She argues that the gravamen of her action is not the discrimination inherent in the insurance rates, but the interference with the state's enforcement of its Act. In other words, plaintiff contends that the Insurance Commissioner has been unable to enforce the Act because defendants conspired to cause the Commissioner to approve discriminatory disability policies which violate state law, thereby preventing the state from affording plaintiff and her class equal protection of the state law. It should be noted, parenthetically, that this is the *first time* in the protracted litigation that plaintiff has complained about "unequal enforcement" of the Act. This claim is so far from the plain gravamen of the complaint (defendants' discriminatory insurance policies) that the Court does not credit it.

In any event, it seems clear that, although § 5 may authorize Congress to prohibit private conspiracies that interfere with the enjoyment of Fourteenth Amendment rights, for the reasons that follow the private conduct sought to be prohibited here is beyond the pale of Congressional authority to enforce the Fourteenth Amendment, since it neither violates nor interferes with the enjoyment of Fourteenth Amendment rights.

1

The Insurance Commissioner had no affirmative constitutional duty to enforce the Act. Plaintiff maintains that the Commis-

sioner's failure to veto the policy forms constituted state "inaction" which deprived her of the equal protection of the laws. She contends that the catch-all provision of the Insurance Code,[9] read together with the Act, creates a compelling affirmative duty on the part of the Commissioner to veto the forms.

It is clear, however, that the Act itself creates no such affirmative duty on the part of the Insurance Commissioner. California Civil Code §§ 52(a) and (b), as currently amended, provide only for a private cause of action, and § 52(c) provides only for a civil action for injunctive relief instituted by the Attorney General or any district attorney or city attorney. Since the Act provides its own judicial remedies, which are independent of all other remedies,[10] action or inaction by the Commissioner leaves plaintiff's rights under the Act undisturbed.

■ Furthermore, the state courts are not bound to enforce any allegedly discriminatory determinations of the Commissioner. The Commissioner's approval of a policy form in the abstract does not preclude a California court, where there is later an individualized controversy on specific facts, from finding that such policy violates the law. *See Frenzer v. Mutual Benefit Health & Accident Ass'n*, 27 Cal.App.2d 406, 414, 81 P.2d 197 (1938).

■ But even if it is found the Commissioner does have an affirmative duty to enforce the Act, plaintiff's construction would have required the Commissioner to disapprove the policy forms at a time when it was unclear that the Act prohibited sex discrimination. At the time the policy forms were approved, the Act explicitly prohibited discrimination based on race, color, religion, ancestry or national origin. Sex was not mentioned. It was not until 1973 that the Act was amended and "sex"

was added to the category of factors based on which discrimination was expressly prohibited. The Commissioner's failure to disapprove the policy when it was uncertain that the Act even applied to sex discrimination cannot reasonably be construed as a breach of an affirmative duty.

**2**

■ Plaintiff further argues that the Commissioner's failure to disapprove the policy constituted selective enforcement in violation of the Equal Protection Clause. In order to show a violation, however, one must allege and prove a deliberate selective process of enforcement based upon an arbitrary classification. *Butler v. Cooper*, 554 F.2d 645, 646 (4th Cir. 1977), citing *Olyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962); *see also United States v. Douglass*, 579 F.2d 545 (9th Cir. 1978). Unequal application of a state law fair on its face is not a denial of equal protection unless there is shown to be present an element of intentional or purposeful discrimination.

■ Unlike most cases involving selective enforcement, plaintiff here is not alleging a pattern of discriminatory enforcement, but rather a single instance of unequal enforcement resulting from passive acquiescence by the Insurance Commissioner in a proposed course of action of the insurance companies. *Cf. Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). This case does not fall into that narrow category of cases allowing relief where there has been intentional and deliberate failure of law enforcement to the plaintiff's prejudice.

**3**

Finally, undergirding plaintiff's entire case is the proposition that her federal right to equal protection under the Fourteenth Amendment affords equal protection only

---

**9.** California Insurance Code § 10291.5(b)(13) states:

"(b) The Commissioner shall not approve any disability policy for issuance or delivery in this state

\* \* \* \* \* \*

(13) Nonconformity with law. If it fails to conform in any respect with any law of this state."

**10.** California Civil Code § 52(c).

against unequal treatment by the state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 452, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972); *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). It is axiomatic, and plaintiff does not dispute, that state action is an essential element of a § 1985(3) claim premised thereon. *Great American Federal Savings & Loan Ass'n v. Novotny, supra.* Thus, plaintiff argues that the Commissioner's act of approving the form of policy is sufficient state action upon which to base her § 1985(3) claim. This Court disagrees.

■ Even if the Commissioner has a duty to enforce the Act as it applies to sex discrimination, the Commissioner's decision to approve, disapprove, or passively approve a policy form does not implicate "giving or securing equal protection of the Laws," because the mere acquiescence by the state in a private action requested by a regulated enterprise, when the state does not put its weight on the side of the proposed practice by ordering it, does not convert the action of the enterprise into that of the state. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978). *Flagg Bros.* reaffirmed the decisions in *Jackson v. Metropolitan Edison Co., supra*, and *Moose Lodge No. 107 v. Irvis, supra*, both of which held that passive acquiescence by a regulatory entity did not constitute state involvement sufficient to call into play the provisions of the Fourteenth Amendment. As the Court of Appeals in this very case stated, courts have refused to find state action where a state simply fails to disapprove a discriminatory practice. *Life Insurance Co. of North America v. Reichardt, supra*, 591 F.2d at 501.

The Commissioner's act in simply approving a form of policy does not necessarily result in discrimination. The state does not *command* the discrimination. Private carri-

ers decide whether and to whom the policies would issue. *See Moose Lodge No. 107 v. Irvis, supra.* Plaintiff admits the Commissioner's approval was *pro forma*, as in *Jackson v. Metropolitan Edison Co., supra*, 419 U.S. at 357, 95 S.Ct. at 456. Although the issue in *Jackson* was framed in the context of interpreting the "under-color-of-state-law" provision of 42 U.S.C. § 1983, that analysis must be coextensive with the Fourteenth Amendment test of whether there has been a state deprivation of equal protection. The Commissioner has placed no official imprimatur on the practice of which Reichardt complains. This Court holds that state action over and above approval of the policy forms by the Insurance Commissioner is essential to plaintiff's claim under 42 U.S.C. § 1985(3). *See Spirt v. Teachers Insurance & Annuity Ass'n*, 475 F.Supp. 1298 (S.D.N.Y.1979).

### B

Accordingly, this Court holds that plaintiff's claim that she was harmed by a conspiracy of defendant insurance companies to prevent or hinder the Insurance Commissioner from giving or securing to women in California the equal protection of the Act was not properly brought under 42 U.S.C. § 1985(3). The claim rests on a Fourteenth Amendment equal protection claim, and even if it be held that § 5 does authorize Congress to prohibit private conspiracies that interfere with the enjoyment of Fourteenth Amendment rights, the private conduct sought to be prohibited here is beyond the pale of Congressional authority to enforce the Fourteenth Amendment for the reason that the conduct alleged neither violates nor interferes with the enjoyment of Fourteenth Amendment rights. Thus, the Court holds that plaintiff's claim of a federal right here is "wholly insubstantial and frivolous," *cf. Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), and declines, therefore, to entertain the suit.[11]

---

11. Plaintiff, of course, could press her claim in the California courts that the defendants and

the Commissioner of Insurance allegedly conspired to deprive her of her rights under the

66

IT IS HEREBY ORDERED that defendants' motion to dismiss this action is GRANTED. Defendants will prepare, serve and lodge with the Court a form of judgment by December 21, 1979.

California Civil Rights Act, and, in fact, that is the *gravamen* of an action she filed in the Superior Court of the City and County of San

Francisco, *Reichardt v. Kinder*, No. 70789, on June 1, 1974.