FAY, Respondent, vs. CITY OF GREEN BAY, Appellant.

*December 3, 1941—March 10, 1942.*

*Thos. C. Dwyer* of Green Bay, for the appellant.
*Richard J. Ballman* of Green Bay, for the respondent.
The following opinion was filed January 13, 1942:

FRITZ, J.  Defendant appeals from a judgment for the recovery by plaintiff of damages for injuries sustained in a fall caused by her foot becoming caught under a protruding spike in a crosswalk.  The jury found that the crosswalk was in an unsafe condition for public use; that such condition was a cause of the plaintiff's fall and injury, and had existed for such length of time prior to plaintiff's fall that defendant in the exercise of ordinary care ought to have discovered the condition in time to have repaired it; that negligence on plaintiff's part contributed in causing her injury and constituted

twenty per cent of the total causal negligence; and that her damages amounted to $4,500.

Defendant contends that the spike under which plaintiff claims her foot became caught did not constitute an actionable defect; that it was not in the crosswalk in that condition a sufficient length of time to put the city on notice; and that the spike introduced in evidence was not sufficiently identified. In order to pass upon these contentions it suffices to note that there was testimony to the following effect. The accident happened at about 8:45 p. m. on August 17, 1940, while plaintiff was walking in a normal manner on a crosswalk consisting of wooden planks laid by the city many years ago. The toe of the right shoe became caught under a bent, hooklike spike which protruded two to two and one-half inches above a wooden plank, and as she tried to twist the shoe loose, but could not, she suddenly fell down on her right shoulder. A witness, Mrs. Fitzgerald, to whose home about one hundred feet from the crosswalk plaintiff was about to go, testified that she saw the spike which caught plaintiff's foot about ten minutes after her fall; that it was loose and stuck up about one and one-half to two inches above the walk, and was the same color as the planks; that they had been cracked and had many spikes sticking up for the last two or three years; and that before August 17th she saw the spike in question pretty near every time she crossed the walk and had turned the spike with her foot the night before plaintiff was injured. Mrs. Fitzgerald's husband, James Fitzgerald, testified that after plaintiff fell he inspected the walk that evening and found the spike in question sticking up about two to two and one-half inches from a plank and bent over. He took hold of it and it was so loose that it turned around. He examined it again on August 18th and 19th and pointed it out to the plaintiff's attorney, who told him to take it. It came out a little hard as he pulled it with his hands, and he then gave it to the attorney. He identified the spike, which was offered in evidence, as the

same spike; that it looks just the same and that it "was the same color then as now, similar to the boards in color." Another witness testified that the crosswalk always was in bad condition, splintered, loose, usually with nails sticking up; and it did not change much in the last three years; and "If you didn't watch yourself, you could fall very easily." Some of defendant's street repairmen and other officials admitted seeing spikes protruding at times. They testified that heavy traffic caused this, due to the rolling of the planks, and that they pounded nails in at intervals when they saw them sticking up. Some of the city's trucks crossed the walk daily, and the men on them had the duty to see that the walk was kept in good repair and carried hammers for that purpose; but they testified that they had not seen the bent nail.

There is considerable conflict in the evidence, but the testimony to the above stated effect reasonably admitted finding that the bent spike, which was received in evidence, was the spike under which plaintiff's foot became caught so as to cause her to fall; that it was then protruding two to two and one-half inches and had been in that condition for several days before plaintiff fell; and that because for a long time such nails were repeatedly protruding from the worn, decayed planks so that the walk was rendered unsafe for public use, the defendant ought in the exercise of ordinary care to have discovered the unsafe condition in time to have repaired the walk. Those facts warrant the conclusion that the spike constituted an actionable defect under the circumstances. As this court has said,—

"It will not do to rest the rule upon inches only. That is a factor in arriving at the result, but the other conditions and surrounding circumstances must also be considered." *Johnson v. Eau Claire,* 149 Wis. 194, 198, 135 N. W. 481; *McCormick v. Racine,* 227 Wis. 33, 277 N. W. 646.

Such a bent, hooklike spike protruding two to two and one-half inches above the crosswalk in such manner as to permit

the toe of a pedestrian's shoe to become caught and held under the hooklike portion of the nail can well be held to render a walk considerably more dangerous and unsafe than an abrupt rise of that height would be when the raised surface has so much greater area than that of a bent spike that the foot can be readily balanced thereon. The spike in question herein constituted a trap similar, in effect, to the hole undermining a sidewalk so as to permit a pedestrian's foot to become caught that was held to constitute an actionable defect in *Hansen v. Green Bay,* 218 Wis. 644, 646, 261 N. W. 746. In so concluding we said in respect to the hole, which was from one to three and one-half inches deep, and so undermined the walk as to permit a traveler's foot to be caught and lodged under the upper block of cement,—

"Such a condition is not comparable to mere irregularities, or slight slopes, declines, or projections. . . ."

It is further contended by defendant that there is a fatal variance between the statements, on the one hand, in plaintiff's written notice of injury and also her complaint in relation to the nature of the unsafe condition and the cause of plaintiff's injury, and, on the other hand, plaintiff's proof on the trial as to the condition which she then claimed to be the cause of her injury; that the notice of injury and also the complaint led defendant to believe that her foot was caught in a defective plank, instead of being caught under a protruding nail, as proven at the trial; and that therefore the notice of injury and claim for damages, which plaintiff gave to the city, was insufficient to constitute the notice required by sec. 81.15, Stats. It is true that, although in her notice of injury plaintiff, in connection with stating that the presence of metal spikes protruding several inches above the wooden planking of the crosswalk caused her injury, also stated that her injury was caused by the presence of rotted openings in the planking, and of a two-inch change in elevation between the wooden crosswalk

and an adjoining concrete sidewalk, the only proof as to cause introduced by plaintiff on the trial was that her fall was caused by her foot becoming wedged between the bent spike and the wooden plank. The absence of proof that the other stated conditions also caused her injury did not result in a fatal variance or even any material conflict or inconsistency. Inasmuch as the proof on the trial was that she fell because her foot became wedged between the protruding bent spike and the walk, and that was in accord with one of the defective conditions stated in her notice of injury to be a cause of her fall, and her statement to that effect was not in conflict or inconsistent with the other statements therein as to other unsafe conditions which also caused her fall, the notice cannot be held insufficient and ineffective under sec. 81.15, in so far as the unsafe condition and cause stated therein was duly proven on the trial.

On this appeal defendant contends also that the jury's assessment of plaintiff's damages at $4,500 is excessive. No such contention appears to have been made by defendant in its motion after verdict; and upon a review of the evidence in relation to plaintiff's injuries and the resulting damages, it is evident that the jury was fully warranted in assessing her damages at $4,500.

On plaintiff's motion to review the court's order denying her motion to have the court substitute for the jury's finding that plaintiff was negligent for her own safety, a finding by the court that she was not negligent, the plaintiff is clearly entitled to a reversal of the order in question. As was frankly conceded by defendant's counsel in his oral argument on this appeal, there is no basis in the evidence for the jury's finding that plaintiff was guilty of contributory negligence. Consequently, the court erred in refusing to substitute for the jury's answer a finding by the court that she was not negligent; and as a finding to this effect renders improper and inapplicable the jury's finding that twenty per cent of the total causal negli-

gence was attributable to plaintiff, and there remains no basis for any such finding and corresponding diminution in the amount which she is entitled to recover herein, the judgment must be modified by increasing the amount of her recovery to the full amount of damages assessed by the jury.

*By the Court.*—Judgment modified as directed in the opinion; and affirmed as modified.

A motion for a rehearing was denied, with $25 costs, on March 10, 1942.