378 So.2d 825 (1979)
Joseph ELLMER, Appellant,
v.
The CITY OF ST. PETERSBURG, a Municipal Corporation, Appellee.
No. 79-448.
District Court of Appeal of Florida, Second District.
December 12, 1979.
*826 Jay M. Thorpe, St. Petersburg, for appellant.
Michael S. Davis, Chief Asst. City Atty., St. Petersburg, for appellee.
GRIMES, Chief Judge.
This is an appeal from an order dismissing the plaintiff's complaint for damages against the City of St. Petersburg for failure to warn him of a riot.
According to the complaint, at 10:00 p.m. on August 20, 1978, riot conditions existed in certain localities of the city including the intersection of 16th Street South and 18th Avenue South. Unaware of the existence of the riot, the plaintiff drove through the intersection where he was stopped, attacked and robbed by a group of rioters. The complaint further asserted that despite having known of the dangerous condition for an hour and a half, the city failed in its duty to protect the safety of its citizens travelling upon the city streets by giving them appropriate warning or cordoning off the locale.
The court below predicated its ruling primarily upon the case of Wong v. City of Miami, 237 So.2d 132 (Fla. 1970). That case resulted from riots which occurred in Miami while the 1968 Republican National Convention was taking place on Miami Beach. Merchants bordering an area in which a civil rights rally had been scheduled requested increased police protection against possible damages that might occur as a result of the assembly. The city at first stationed numerous police officers in the vicinity but later in the evening the mayor ordered them removed. Thereafter, some of the participants in the rally created a riot and caused substantial damage to the neighboring stores.
The merchants sued the city for damages. The trial court dismissed the complaint for failure to state a cause of action, and the district court of appeal affirmed but certified the case to the supreme court. The supreme court discharged certiorari thereby leaving intact the decision of the district court of appeal. In the course of its opinion, the supreme court said:
We agree with respondents' arguments and with the decision announced by the District Court majority. But we are somewhat disturbed with what we perceived to be inferences appearing in the majority opinion and in the brief of the County that the removal of the officers was a negligent act and that respondents are shielded from liability merely because sovereign immunity has not been relaxed sufficiently by prior decisions.
While sovereign immunity is a salient issue here, we ought not lose sight of the *827 fact that inherent in the right to exercise police powers is the right to determine strategy and tactics for the deployment of those powers... . The sovereign authorities ought to be left free to exercise their discretion and choose the tactics deemed appropriate without worry over possible allegations of negligence. Here officials thought it best to withdraw their officers. Who can say whether or not the damage sustained by petitioners would have been more widespread if the officers had stayed, and because of a resulting confrontation, the situation had escalated with greater violence than could have been controlled with the resources immediately at hand? If that had been the case, couldn't petitioners allege just as well that that course of action was negligent?
237 So.2d at 134.
The supreme court recently reaffirmed Wong's emphasis on governmental discretion in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). This case involved the extent to which Section 768.28, Florida Statutes (1975), did away with sovereign immunity. The court concluded that despite the absence of an express exception in the statute, certain policy making, planning, or judgmental governmental functions could not be the subject of traditional tort liability. In reaching this conclusion the court relied heavily upon that portion of Wong which had recognized that a decision to remove the police from the area in which it was feared that a riot might occur was within the realm of governmental discretion. As a guide toward deciding future cases, the court adopted an analysis which distinguished between "planning" and "operational" levels of decision making by governmental agencies.
Applying this test to the facts at hand, we believe that the "negligence" attributed to the city in this case falls within the scope of its discretionary planning level function. The alleged failure to warn of riot conditions was but an aspect of the larger responsibility of providing police protection from the riot and restoring law and order to the city streets. Just as the city's handling of a riot is an activity involving basic planning decisions, so too any attempts to warn of riot conditions must involve planning with respect to how, when, and by what means it is to be accomplished so as to avoid causing public panic and to prevent confrontations with rioters which might exacerbate the situation. Decisions are also necessary concerning how to employ available manpower to effectuate the warnings while at the same time maintain sufficient forces to deal directly with the rioters and contain the spread of the riot to other areas of the community.
We reject the idea that any planning level function must occur back at headquarters and that any decision made on the scene must necessarily be operational. Sometimes, only persons in the field can make effective plans. Likewise, we reject the argument that giving warning to persons of the existence of a riot is merely the equivalent of a city's duty to warn of a dangerous defect in one of its streets. The obligation to make an appropriate response to the fluid and volatile conditions of a riot is far different from the duty to warn of a static condition which may constitute a hazard on a highway.
We find comfort in the fact that the only other case brought to our attention having facts substantially the same as ours arrived at a similar result. In Jahnke v. Incorporated City of Des Moines, 191 N.W.2d 780 (Iowa 1971), the court held that a city is not liable to a passenger injured by a mob for failure to warn him that his automobile was approaching a riot area. Significantly, the court relied in part upon Wong v. City of Miami, supra, and this court's decision in Henderson v. City of St. Petersburg, 247 So.2d 23 (Fla.2d DCA 1971), in which we held that a municipality is not liable for failure to supply general police protection. The Iowa court concluded that there was no meaningful distinction between failing to protect from a riot and failing to warn of a riot.
*828 As a secondary point, the plaintiff argues that the trial court should have given him the opportunity to amend his complaint. Ordinarily this is so where there is any likelihood that a plaintiff can amend so as to state a cause of action. Slavin v. McCann Plumbing Company, 73 So.2d 902 (Fla. 1954); Jackson v. Palm Beach County, 265 So.2d 713 (Fla. 4th DCA 1972). Here, however, the whole thrust of the complaint was that in violation of a duty to warn him away the city negligently permitted the unsuspecting plaintiff to proceed into the riot area to his detriment. In view of the conclusion we have reached in our opinion, it would serve no purpose for us to permit the filing of an amended complaint. Matson v. Tip Top Grocery Co., 151 Fla. 247, 9 So.2d 366 (1942).
AFFIRMED.
HOBSON and SCHEB, JJ., concur.