**Will COOPER, Plaintiff,**

v.

**David MOLKO, Gerard Terriault, Judy Stanley Powell, Virginia F. Mabry, Chris Carlson, Jim Knoblock, Jim "Zoe", Dr. George K. Cooper, June C. Cooper, "Phil" Folks, "Carl Cop," "Peter Police," One Through Twenty, "John Does" One Through Ten, and "Jane Does" One Through Ten, Defendants.**

**No. C–80–0633 TEH.**

United States District Court,
N. D. California.

Feb. 3, 1981.

Bob Baker, San Francisco, Cal., for plaintiff.

Paul A. Teschner, Chicago, Ill., Leslie N. Duryea, II, Newport Beach, Cal., Stanley F.

Leal, Kelly, Leal & Olimpia, Sunnyvale, Cal., for defendants.

## MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND FOR ATTORNEY'S FEES

HENDERSON, District Judge.

This matter came on for hearing on motions of Defendants Cooper to dismiss for lack of personal jurisdiction and improper venue, and on motions of Defendants Cooper, Mabry, and Molko to dismiss for lack of subject matter jurisdiction and for attorney's fees. For the reasons set out below, all of Defendants' motions are denied.

## I. BACKGROUND

Plaintiff Will Cooper, a member of the Unification Church, brings this suit against his parents,[1] seven alleged "deprogrammers,"[2] and various members of the Oakland and South San Francisco Police Departments,[3] including Officers Folks and "Cop" of the Oakland Police Department. He charges that Defendants violated a variety of his federal and state rights in an unsuccessful attempt to "deprogram" him from his adherence to the Unification Church.

Specifically, Plaintiff alleges that his parents and the "deprogrammers" abducted him outside of a restaurant in Oakland, and took him to a motel in South San Francisco where he was held captive for about five days. While he was being held at the motel, the "deprogrammers" allegedly subjected Plaintiff to verbal abuse and threats of violence in an attempt to get him to renounce his belief in the Unification Church and its leader, the Rev. Moon. After Plaintiff feigned "capitulation," his parents took him on a meandering automobile trip back to their home in Illinois. In Arizona, however, Plaintiff escaped while his parents were sleeping and returned to his home in California the next day.

Plaintiff further alleges that Oakland and South San Francisco police officers knew of his abduction, but failed to take any action before, during, or after the event, pursuant to an agreement with the "deprogrammers." All of the Defendants are alleged to have entered into a conspiracy for the purpose of depriving Plaintiff of various rights.

Plaintiff has alleged that all Defendants conspired to deprive him of his constitutional rights of freedom of religion, freedom of association, right of interstate travel, right to counsel, and equal protection of the laws in violation of 42 U.S.C. § 1985(3), that this was done under color of law in violation of 42 U.S.C. § 1983, and that the Defendant police officers failed to prevent this conspiracy in violation of 42 U.S.C. § 1986. Plaintiff also asserts pendent state claims of false imprisonment and violation of the California Civil Rights Act (California Civil Code § 51.7) against all Defendants, and assault and battery against Defendant "deprogrammers." Plaintiff seeks damages and injunctive relief.

## II. PERSONAL JURISDICTION

Defendants Cooper first move to dismiss for lack of personal jurisdiction, contending in essence that they lack minimum contacts with California sufficient to justify jurisdiction over them in this Court. Where, as here, the claim arises out of defendants' forum-related activities, jurisdiction is proper when it is "reasonable," and:

> The non-resident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

---

1. Dr. George Cooper and June Cooper.

2. David Molko, Gerard Terriault, Judy Stanley Powell, Virginia F. Mabry, Chris Carlson, Jim Knoblock, and Jim "Zoe".

3. Officer Folks, Officer "Cop", and Does.

*Data Disc, Inc. v. Systems Technology Associates,* 557 F.2d 1280, 1287 (9th Cir. 1977). Taking the allegations of the complaint as true, parents coming into the state, participating in a conspiracy to abduct their son, and holding him in a California motel for five days for "deprogramming" would seem more than ample contact to meet the test for personal jurisdiction.

Accordingly, Defendants Cooper's motion to dismiss for lack of personal jurisdiction is denied.

## III. VENUE

■ Defendants Cooper second move to dismiss for improper venue. The applicable statute, 28 U.S.C. § 1391(b) provides as follows:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose....

While it is true that some of the acts described in the complaint did or may have taken place outside the Northern District of California, a fair reading of the complaint reveals that this district is quite clearly the locus of Plaintiff's claim. *See id.; Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). We note, moreover, that most of the likely evidence, witnesses, and parties in this case are located within this district.

Accordingly, Defendants Cooper's motion to dismiss for improper venue is denied.

## IV. SUBJECT MATTER JURISDICTION

Defendants' motions to dismiss for lack of subject matter jurisdiction are considerably more substantial. Plaintiff predicates federal jurisdiction through 28 U.S.C. § 1343 (civil rights jurisdiction), on alleged violations of 42 U.S.C. §§ 1983, 1985(3), and 1986. The question is whether the acts complained of are redressable through those statutes. As always when considering a motion to dismiss for failure to state a claim, the allegations of the complaint are taken as true, *Walker Process Equipment v. Food Machinery & Chemical Corp.,* 382 U.S.

172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), and we proceed on the principle that dismissal is inappropriate unless it appears beyond dispute that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See, e. g., McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980).

### A. *Section 1983*

■ In order to prevail on the claim brought under 42 U.S.C. § 1983, Plaintiff must prove both that defendants deprived him of a right secured by the Constitution and laws of the United States, and that Defendants acted "under color of [state] law." *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). "Under color of law" is the same as the "state action" required under the Fourteenth Amendment. *United States v. Price,* 383 U.S. 787, 794 n.7, 86 S.Ct. 1152, 1156 n.7, 16 L.Ed.2d 267 (1966). Defendants move to dismiss Plaintiff's § 1983 claims on the ground that Plaintiff has not sufficiently alleged state involvement.

#### 1. *The police officers.*

Plaintiff makes the following allegations concerning the conduct of the Defendant police officers:

Generally, all of the Defendants engaged in a conspiracy "for the purpose of depriving Plaintiff, by reason of his membership in the [Unification] Church, of the equal protection of the laws" and other constitutional rights. Complaint ¶ 19. The Defendants Oakland and South San Francisco police officers agreed to lend the color and support of the law to this conspiracy. Complaint ¶¶ 60, 62.

More specifically, Defendant Oakland police officers Folks and "Cop" were notified prior to Plaintiff's abduction that the "deprogrammers" had the restaurant where Plaintiff worked under surveillance. Complaint ¶ 58. Upon approaching the "deprogrammers", Folks and "Cop" learned of the

"deprogrammers'" activities and their plan to abduct Plaintiff. Complaint ¶¶ 59–60. Because Plaintiff was a member of the Unification Church, Folks and "Cop" took no action to warn Plaintiff or otherwise prevent the planned abduction pursuant to a formal or implicit agreement with the "deprogrammers." Complaint ¶ 60. Folks and "Cop" communicated their agreement with and approval of the plan to other police officers and superiors. Complaint ¶ 61.

Following his abduction in Oakland, Plaintiff was taken to South San Francisco, where he was kept in a motel room against his will. Complaint ¶¶ 24–48. The Defendant South San Francisco police officers knew of this, but failed to take any action because of Plaintiff's association with the Unification Church. Complaint ¶ 62. The South San Francisco police officers had a formal or implicit agreement with the "deprogrammers" to support them by not interfering with their operation. Complaint ¶ 62.

Following his escape, Plaintiff informed the Oakland Police and the District Attorney of Alameda County of his abduction, but they refused to take any action because Plaintiff was a member of the Unification Church. Complaint ¶¶ 57, 63.

■ In short, Plaintiff has alleged that the Defendant police officers knew of his abduction, but failed to take any action because he was a member of the Unification Church. The question thus presented is whether these allegations of police inaction can constitute a violation of § 1983.

In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), while discussing whether a remedy under state law precludes a claim under § 1983, the Court stated:

It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Four-

teenth Amendment might be denied by the state agencies.

*Id.* at 180, 81 S.Ct. at 480. And further:

While one main scourge of the evil—perhaps the leading one—was the Ku Klux Klan, the remedy created was not a remedy against it or its members but against those who representing a State in some capacity were *unable* or *unwilling* to enforce a state law. . . .

There was, it was said, no quarrel with the state laws on the books. It was their lack of enforcement that was the nub of the difficulty.

*Id.* at 175–176, 81 S.Ct. at 477–478.

■ It is clear that § 1983 was intended to apply to acts by police officers of omission as well as commission. The Seventh Circuit, for example, in *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972), held that a police officer who was present when other police officers beat the plaintiff could be held liable under § 1983 for failing to intervene on behalf of the plaintiff. "We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." 466 F.2d at 11. Thus, the Seventh Circuit held that a police officer's failure to take action could be a violation of an individual's civil rights. Other courts have reached the same conclusion. *Smith v. Ross*, 482 F.2d 33, 36–37 (6th Cir. 1973) ("law enforcement officer can be liable under § 1983 when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly, and thereby denies equal protection"); *Azar v. Conley*, 456 F.2d 1382, 1387 (6th Cir. 1972). *See also Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1968), *cert. denied*, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969).

The gravamen of Plaintiff's § 1983 claim is that Oakland and South San Francisco police officers knew of his abduction and failed to intervene because Plaintiff was a member of the Unification Church, thereby denying him the equal protection of the

laws. Such a claim states a cause of action against the Defendant police officers under § 1983.

### 2. *The private parties.*

■ Acts by private parties with no involvement by the state or its officials lack the requisite state action to make out a claim under § 1983. Having sufficiently alleged a cause of action against the state officials, in order to sustain a cause of action against the private parties, Plaintiff must then allege that the private parties acted in concert, with the state officials. *United States v. Price*, supra, 383 U.S. at 795, 86 S.Ct. at 1157. In this regard, Plaintiff has alleged that there was a conspiracy among all of the Defendants. The Oakland and South San Francisco police officers are alleged to have known of the abduction and not intervened pursuant to an agreement with the "deprogrammers."

Plaintiff will be entitled to relief under § 1983 against the private parties if he can prove that they had an understanding with the police officers to deny Plaintiff the equal protection of the laws. "The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful [citations omitted]." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).

In *Adickes*, the Supreme Court faced a similar state action issue in the context of a motion for summary judgment. A white woman, who was refused service in the defendant's cafeteria because she was in the company of blacks and who was subsequently arrested upon leaving the premises by local police for vagrancy, brought suit under § 1983. In that case, there was no evidence of communication between the defendant, who was a private party, and a police officer. Nonetheless, because a jury might "infer from the circumstances that the policeman and a Kress employee had a 'meeting of the minds' and thus reached an understanding that petitioner should be re-

fused service," the § 1983 claim was sustained. 398 U.S. at 158, 90 S.Ct. at 1608. Similarly in this case, if Plaintiff can prove his allegation that there was an agreement between the police officers and the private parties to deny him police protection, thereby denying him the equal protection of the laws, he will be entitled to relief in his § 1983 claim against the private parties.

It is not important that all of Plaintiff's specific allegations of an agreement with the police officers concerned Defendant "deprogrammers" and not Defendants Dr. and Mrs. Cooper. The "deprogrammers" were allegedly employed by Dr. and Mrs. Cooper to do exactly what they did. Furthermore, Plaintiff had alleged that there was a conspiracy among all of the Defendants, and has made specific allegations which, if proven, would indicate at least that Dr. and Mrs. Cooper conspired with the "deprogrammers." Under these circumstances, Plaintiff's cause of action under § 1983 could not very well be upheld as to the "deprogrammers" and dismissed as to Dr. and Mrs. Cooper.

In sum, the Court holds that Plaintiff has sufficiently alleged state action in violation of § 1983 to sustain a cause of action against Defendant police officers, and further that Plaintiff has sufficiently alleged an agreement between the private parties and the state actors to sustain a § 1983 cause of action against the private parties as well. Accordingly, Defendants' motions to dismiss the § 1983 claims for lack of subject matter jurisdiction are denied.

### B. *Section 1985(3)*

Section 1985, enacted as part of the Ku Klux Klan Act of 1871, proscribes conspiracies to interfere with civil rights. In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that § 1985(3) reaches private as well as state conduct. Nevertheless, the statute covers only a limited class of conspiracies, the elements of which are as follows:

To come within the legislation a complaint must allege that the defendants

did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Id.* at 102–03, 91 S.Ct. at 1798–99.

■ Plaintiff has sufficiently alleged a conspiracy and injury to satisfy elements (1), (3), and (4). The second element, the core of § 1985(3), involves a dual inquiry: whether Plaintiff has sufficiently alleged (a) a violation of a protected right, and (b) an invidiously discriminatory class-based animus motivating the violation. *Life Insurance Co. of North America v. Reichardt*, 591 F.2d 499, 502–03 (9th Cir. 1979); *see Griffin, supra*, 403 U.S. at 102, 91 S.Ct. at 1798. In addition, *Griffin* makes clear that Plaintiff must also identify a proper source of congressional power to reach the alleged conspiracy. *See* 403 U.S. at 104–06, 91 S.Ct. at 1799–01. *Baer v. Baer*, 450 F.Supp. 481, 491 (N.D.Cal.1978). These elements are discussed below.

### 1. Class-based animus.

In *Griffin*, the Supreme Court directed that to sustain a § 1985(3) cause of action, the plaintiff must allege that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. at 102, 91 S.Ct. at 1798. Here, Plaintiff alleges that Defendants' actions were motivated by an animus against the class consisting of members of Plaintiff's religious group, the Unification Church.

Defendants argue first that members of a religious group are not a "class" entitled to protection under § 1985(3). The *Griffin* Court did indeed leave open what classes

are covered, and several courts have defined such classes in terms of "immutable characteristics for which the members of the class have no responsibility." *E. g., Carchman v. Korman Corp.*, 594 F.2d 354, 356 (3d Cir.), *cert. denied*, 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979).

■ Nevertheless, since *Griffin*, courts have generally assumed that religious groups are protected by § 1985(3). *See, e. g., Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973); *Baer v. Baer*, 450 F.Supp. 481, 490–91 (N.D.Cal.1978). Indeed, in holding women purchasers of disability insurance to be an appropriate class, the Ninth Circuit recently noted that the "Congressional debates evinced a concern for all groups subject to the organized lawlessness of the Ku Klux Klan, including ... certain religious groups." *Life Insurance Co. of North America v. Reichardt*, 591 F.2d 499, 505 (9th Cir. 1979). *See also DeSantis v. Pacific Telephone and Telegraph Co.*, 608 F.2d 327, 333 (9th Cir. 1979) (homosexuals not a protected group because not a "suspect" or "semi-suspect" classification). Thus, there can be little doubt that Plaintiff's religious group is a class for § 1985(3) purposes.

■ Second, Defendants argue that their actions were not motivated by any animus at all, but rather by parental concern over the well-being of Plaintiff. Defendants correctly point out that only injuries inflicted upon the plaintiff because of his status as a member of an identifiable class are actionable under § 1985(3). *See Lopez v. Arrowhead Ranches*, 523 F.2d 924, 927 (9th Cir. 1975). Thus, in cases quite similar to the present one, some district courts have found no subject matter jurisdiction because the alleged "deprogramming" activities were motivated by parental concern. *E. g., Weiss v. Patrick*, 453 F.Supp. 717, 723–24 (D.R.I.1978).

While this court has no occasion to question the Coopers' assertion that they acted out of love for their son, Plaintiff has nevertheless properly alleged that his parents and the other defendants were moti-

vated by class-based animus. At the very least, then, this issue of motivation would seem a factual issue inappropriate for resolution on a motion to dismiss. *See Augenti v. Cappellini*, 84 F.R.D. 73, 78 (M.D.Pa.1979) (identical issue inappropriate for disposition by summary judgment). We note, moreover, that whatever good ultimate purpose the Defendants may have had in mind, that good motive would not necessarily negate their alleged animus against Plaintiff's religious group, which Plaintiff claims prompted their actions.

In sum, the Court finds that Plaintiff's religious group does constitute a "class" within the scope of § 1985(3) and that Plaintiff has sufficiently alleged a class-based animus on the part of Defendants.

2. *Rights protected and protectable.*

 Section 1985(3) confers no substantive rights, but rather merely provides a remedy for the enforcement of rights guaranteed elsewhere. *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 618, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979); *Life Insurance Co. of North America v. Reichardt*, 591 F.2d 499, 504 (9th Cir. 1979). As indicated above, in assessing whether the rights allegedly violated can be remedied through § 1985(3), *Griffin* requires a two-pronged analysis: (a) identification of a protected right; and (b) identification of a source of congressional power to prohibit the conduct. *Life Insurance Co., supra,* 591 F.2d at 504.[4]

 Here, to the extent that the conspiracy was cloaked in state action, both prongs are easily met. In particular, the Fourteenth Amendment[5] clearly offers substantive protection against state action and, correspondingly, Congress has power to punish state action that violates the Fourteenth Amendment. *See Griffin, supra,* 403 U.S. at 96–99, 91 S.Ct. at 1795–1797; *see, e. g., Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir. 1972).

Moreover, even if the alleged conspiracy was not conducted under color of state law, but was rather merely a *private* conspiracy, Plaintiff's claim of a violation of his right to travel interstate satisfies the *Griffin* requirements. In *Griffin*, the Court concluded that § 1985(3) properly protects against private infringement both the right to be free from racial discrimination (under the Thirteenth Amendment) and the right to travel interstate. 403 U.S. at 104–07, 91 S.Ct. at 1799–01.[6] As to the right of interstate travel, the Court first noted that it "is assertable against private as well as governmental interference," *id.* at 105, 91 S.Ct. at 1799, and went on to find that the right "is within the power of Congress to protect by appropriate legislation," *id.* at 106, 91 S.Ct. at 1800.

Here, Plaintiff has alleged that one of the insistent demands of his captors was that he return to Illinois with his family. He claims that he feigned capitulation after concluding that he could escape abuse and imprisonment only by doing so. Further, Plaintiff says, his parents took him on a slow, meandering drive back to Illinois. After four days they had gone no farther than Arizona, and Plaintiff was still "in fact their prisoner." Complaint ¶ 52. While his parents slept one night, Plaintiff allegedly took his first available opportunity to escape; when he did, his father gave chase in his automobile, attempting to recapture Plaintiff. Complaint ¶¶ 46–55.

In sum, Plaintiff claims that he was coerced into leaving the state with his parents and was thereafter prevented from returning to California, to his home and his co-religionists. Under these circumstances, the Court finds that Plaintiff has sufficient-

---

**4.** *But see Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 385, 99 S.Ct. 2345, 2355, 60 L.Ed.2d 957 (Stevens, J., concurring).

**5.** Plaintiff has alleged violations of, *inter alia,* his Fourteenth Amendment right to equal pro-

tection and his incorporated rights to freedom of religion and association.

**6.** Racial discrimination is of course not in issue here.

ly alleged interference with his right to travel interstate to sustain a § 1985(3) action for private conspiracy. *See Griffin, supra,* 403 U.S. at 106, 91 S.Ct. at 1800; *Rankin v. Howard,* 457 F.Supp. 70, 75 (D.Ariz.1978). *See also Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).[7]

Plaintiff having sufficiently alleged interference with rights protected and protectable through § 1985(3), and having sufficiently alleged that a class-based animus motivated that interference, Defendants' motions to dismiss Plaintiff's § 1985(3) claims for lack of subject matter jurisdiction are hereby denied.

### C. *Section 1986*

Defendants have moved to dismiss Plaintiff's § 1986 claims (neglect in preventing § 1985 violation) on the logical ground that where there is no § 1985 violation, there can be no § 1986 violation. *See, e. g., Hahn v. Sargent,* 523 F.2d 461, 469–70 (1st Cir. 1975). Having denied Defendants' motions to dismiss Plaintiff's § 1985 claims, the Court also hereby denies Defendants' motions to dismiss the § 1986 claims.

### V. ATTORNEY'S FEES

Finally, Defendants have moved for attorney's fees under 42 U.S.C. § 1988, which gives the court discretion to allow a prevailing party reasonable attorney's fees in civil rights actions. Having failed to prevail on any of their motions to dismiss, Defendants' motions for attorney's fees are hereby denied.

SO ORDERED.

---

**7.** Plaintiff also urges this Court to find the alleged violations of his Fourteenth Amendment rights reachable—even if no state action is ultimately shown—through § 1985(3). The Court declines to do so. .

*Griffin* left open the question whether Congress could reach a *private* conspiracy to interfere with Fourteenth Amendment rights through the enforcement clause, § 5, of that Amendment. *403 U.S. at 107, 91 S.Ct. at 1801.* Some case law holds that Congress does have such power and has exercised it in § 1985(3). *See Action v. Gannon,* 450 F.2d 1227, 1235 (8th Cir. 1971). Plaintiff's argument also finds cogent support in some scholarly commentary. *See, e. g.,* Comment, *The Deprogramming of Religious Sect Members: A Private Right of Action Under Section 1985(3),* 74 Nw.U.L.Rev. 229, 241–52 (1979).

Nevertheless, while the Supreme Court has flirted with such an expansive view of congressional power under the Fourteenth Amendment, *see Oregon v. Mitchell,* 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970); *Katzenbach v. Morgan,* 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); *United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966), the Court has never fully endorsed it in this context. *See Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 384–85, 99 S.Ct. 2345, 2355–56, 60 L.Ed.2d 957 (1979) (Stevens, J., concurring) ("[W]hile 1985(c) does not require that a defendant act under color of state law, there still can be no claim for relief based on a violation of the Fourteenth Amendment if there has been no involvement by the State.") Nor has the Ninth Circuit adopted the Eighth Circuit's view expressed in *Action v. Gannon, supra. See Life Insurance Co. of North America v. Reichardt,* 591 F.2d 499, 504–06 (9th Cir. 1979) (expressly declining to reach issue). *See also Reichardt v. Life Insurance Co. of North America,* 485 F.Supp. 56, 61–63 (N.D.Cal.1979). Accordingly, for the reasons amply set out in Judge Williams' thoughtful opinion in *Baer v. Baer,* 450 F.Supp. 481, 493–96 (N.D.Cal.1978), we decline to hold that Congress has the power under § 5 of the Fourteenth Amendment to reach a private conspiracy (to the extent that it is private) in this case.