No. 54,780

PATRICIA WARDEN, *Appellant,* v. THE CITY OF WICHITA, A Municipal Corp., *Appellee.*

(658 P.2d 1043)

Opinion filed February 19, 1983.

*Daniel S. Garrity,* of Garrity, Fletcher & Haines, P.A., of Wichita, argued the cause and was on the brief for appellant.

*H. E. Jones,* assistant city attorney, argued the cause, and *John Dekker,* city attorney, and *Joe Allen Lang,* assistant city attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: This is an action by plaintiff, Patricia Warden, against defendant City of Wichita seeking recovery for personal injuries she received as a result of mob violence. The district court dismissed the action pursuant to K.S.A. 60-212(*b*)(6) on the grounds plaintiff had failed to state a claim against the defendant municipality upon which relief could be granted. Plaintiff appeals from said determination.

The facts, as stated in plaintiff's petition, are summarized as follows. Shortly after 6:00 p.m. on April 21, 1980, a large crowd of disorderly persons assembled near the intersection of Grove and 21st streets in Wichita. The mob started attacking passing vehicles by diverse means including the throwing of various types of projectiles. Plaintiff, while a passenger in an automobile being driven through the area approximately an hour later, was injured when she was struck in the face by a brick thrown by an unidentified member of the mob.

On April 1, 1982, plaintiff filed suit against the defendant City alleging the municipality: (1) had a duty to keep its streets safe;

(2) was negligent in failing to warn her of the danger from the mob; and (3) negligently allowed her vehicle to move into the unsafe area. The trial court dismissed the action for failure to state a claim upon which relief could be granted.

On appellate review of such dismissals, the question for determination is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim. *Robertson v. City of Topeka*, 231 Kan. 358, 644 P.2d 458 (1982).

On appeal plaintiff concedes that her "claim is not based upon any act of negligence in the efforts of city personnel to disperse the crowd and thus remove the defect." Rather, plaintiff bases her claim on the defendant City's alleged negligence in failing to warn her of a street defect—to wit, the presence in the area of a violent mob. In his attempt to scale the formidable barrier of governmental immunity plaintiff's counsel has exhibited a certain creativity, but his position is untenable.

The plain fact is plaintiff's unfortunate injuries were occasioned by mob violence. From 1868 to July 1, 1979, Kansas had statutes holding municipalities liable for injuries resulting from mob violence. K.S.A. 12-203 and 204 (Weeks). However, when the Kansas Tort Claims Act, K.S.A. 1982 Supp. 75-6101 *et seq.*, was enacted the mob violence statutes were repealed. L. 1979, ch. 186, § 33. Originally, the Act as proposed to the 1979 Kansas Legislature contained a comprehensive section still permitting persons injured by mob violence to recover from municipalities and counties. 1979 Sub. S.B. No. 76, new sec. 9. However, significant opposition arose to continued government liability for mob actions. Indicative of this opposition were the comments of the League of Kansas Municipalities made to the House Judiciary Committee.

"(4) The bill should 'repeal the mob liability statute now applicable to cities'. Well, the bill does repeal the existing statutes, in K.S.A. 12-203 and 12-204. But it reinserts the same basic provisions into Section 9. We are well aware that this matter has been before this committee in the past. We simply reassert our belief that the mob liability act which emerged in civil war days is obsolete in present day society and should be repealed." "Statement on Sub. SB 76 - Tort Liability," from League of Kansas Municipalities to House Committee on Judiciary (March 20, 1979).

Ultimately (after renumbering of the section from 9 to 5), the mob violence provision was deleted in toto from the final version of the Tort Claims Act. See 1979 Sub. S.B. No. 76, new sec. 5, as deleted by House Committee of the Whole, pp. 5-6. The legislative intent to eliminate municipal liability for mob violence is clear and undeniable.

Further, K.S.A. 1982 Supp. 75-6104(*d*) and (*m*), Kansas Tort Claims Act, specifically exempts:

"(*d*) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion be abused;

. . . .

"(*m*) failure to provide, or the method of providing, police or fire protection;"

Plaintiff, obviously aware of the defendant City's immunity from liability for failing to quell the mob, seeks instead to call the mob action by another name—a street defect. In asserting this novel theory plaintiff relies on the following language in *Grantham v. City of Topeka*, 196 Kan. 393, 411 P.2d 634 (1966):

"A city rests under the positive legal duty to keep its streets in a condition reasonably safe for their intended use, and it is liable in a civil action for injuries resulting from neglect to perform this duty. Streets must be such that the traveling public may use them and be reasonably secure. . . .

"What constitutes an actual street defect was defined in *Loftin v. City of Kansas City,* 164 Kan. 412, 190 P.2d 378 [1948], where it was held:

" 'To be actionable, a defect in a street must be a condition or object therein which makes the street unsafe and dangerous for travel and use and is the legal cause of the injury of which complaint is made.' (Syl. ¶ 1.)

*In the final analysis, whether a particular condition or situation is a street defect depends upon the facts and circumstances of each case. (McCollister v. City of Wichita,* 180 Kan. 401, 304 P.2d 543 [1956]; *Taggart v. Kansas City,* 156 Kan. 478, 134 P.2d 417 [1943].)

"It is not necessary that a defective condition be in the surface of the roadway; that is, in the pavement or the curb and gutter. If the condition is such that it affects the street to the extent that it is not reasonably safe for its intended use, a defective street condition exists. (*Burns v. Emporia,* 63 Kan. 285, 287, 65 Pac. 260 [1901]; *Turner v. City of Wichita,* 139 Kan. 775, 33 P.2d 335 [1934].)" 196 Kan. at 398-99 (emphasis supplied).

The particular issue in *Grantham* was whether the failure to replace bent-over stop and one-way signs could constitute failure to remedy street defects. The language in *Grantham* is admittedly broad.

Black's Law Dictionary 506 (4th ed. rev. 1968) defines road defects as follows:

"DEFECT IN HIGHWAY OR STREET. Ordinarily anything in the condition or state of highway or street that renders it unreasonably safe for travel. *Payne v. State Highway Commission,* 136 Kan. 561, 16 P.2d 509, 511 [1932]. Thus courts have held as highway or street defects corrugations, *Cheney v. State Highway Commission,* 142 Kan. 149, 45 P.2d 864, 866 [1935]; spike in cross walk, *Fay v. City of Green Bay,* 240 Wis. 36, 1 N.W.2d 767, 768 [1942], a hollow, *Adams v. Town of Bolton,* 297 Mass. 459, 9 N.E.2d 562, 111 A.L.R. 856 [1937], and anything that may reasonably be expected to interfere with safe use of sidewalk by pedestrian. *City of Birmingham v. Wood,* 240 Ala. 138, 197 So. 885, 887 [1940]."

Obviously a specific definition cannot be stated that adequately includes all possible street defects, so broad language must be employed. This does not mean, however, that there are no limitations on the nature, qualities or characteristics of street defects.

Plaintiff cites no authority from any jurisdiction holding a riot can be classified as a street defect nor has our research revealed any. Indeed, as noted by defendant, in reviewing street defect cases one obtains the clear impression defects must be of a physical, structural or static nature in or near the road including design and maintenance of traffic signs and signals.

In Kansas the closest case factually to the issue before us is *Everly v. City of Gas,* 95 Kan. 305, 147 Pac. 1134 (1915), which involved a milk cow, described as vicious, who was wandering the streets of Gas and terrorizing its inhabitants. The plaintiff brought an action against Gas for failure to keep the streets safe and failure to enforce a local anti-loose stock ordinance. Plaintiff was, however, attacked in her garden and not on the street. The court in *Everly,* after discussing a city's immunity for governmental acts, commented:

"An exception exists with reference to maintaining public streets and ways in a condition of safety for public travel. This duty is regarded as having been imposed directly upon the city. Being so imposed, the duty is ministerial in character and the city is responsible for negligence in discharging it. . . . In this connection it may be observed that the *liability of a city for the condition of its streets extends to structural defects, obstructions, want of repair, and the like, making travel upon the street dangerous. It does not extend to improper and unreasonable uses of the highway* contrary to governmental ordinances enacted for the convenience and safety of the traveling public, and the city is not liable for breaches of such ordinances . . . ." 95 Kan. at 307-08. (Emphasis supplied.)

In jurisdictions other than Kansas, *Ellmer v. City of St. Petersburg,* 378 So. 2d 825 (Fla. Dist. Ct. App. 1979), appears most in point. In *Ellmer,* plaintiff drove into a riot area and was attacked by rioters. Plaintiff brought an action against the city for alleged negligent failure to warn him of the riot danger and argued failure to warn was comparable to failing to warn of a street defect. In rejecting this contention the court held:

"[W]e reject the argument that giving warning to persons of the existence of a riot is merely the equivalent of a city's duty to warn of a dangerous defect in one of its streets. The obligation to make an appropriate response to the fluid and volatile conditions of a riot is far different from the duty to warn of a static condition which may constitute a hazard on a highway." 378 So. 2d at 827.

In *Ellmer* plaintiff did not contend the riot was itself a street defect—he just likened the duty to warn to that of a street defect.

Plaintiff's injuries in the case here do not arise from any quality or condition existing in the street but rather from an unlawful use being made of the street. Plaintiff was the victim of a crime, not a street defect. We conclude an unlawful in-progress act of human violence, such as a member of an unruly mob throwing a brick at a passing vehicle, is not, as a matter of law, a street defect upon which liability of a municipality can be predicated.

Having concluded that plaintiff's injuries did not occur as a result of a "street defect," we obviously do not reach the question of whether there was a duty to warn plaintiff of the "street defect."

We therefore further conclude that the trial court did not err in dismissing the petition herein for failure to state a claim upon which relief could be granted.

The judgment is affirmed.