446 So.2d 203 (1984)
Justine A. HIGDON, As Personal Representative of the Estate of Benny Higdon, Deceased, and On Behalf of Justine A. Higdon, As Wife of Benny Higdon and Christy N. Higdon, Robin L. Higdon and Benny M. Higdon, Jr., Minor Children of Benny Higdon, Deceased, Appellant,
v.
METROPOLITAN DADE COUNTY, a Political Subdivision; City of Miami, a Municipality; Bobby Jones, Individually and As Director of the Dade County Public Safety Department; Merritt Stierheim, Individually and As County Manager of Metropolitan Dade County; Kenneth Harms, Individually and As Chief of City of Miami Police Department; and Joseph Grassie, Individually and As City Manager of the City of Miami, Appellees.
No. 81-1809.
District Court of Appeal of Florida, Third District.
February 28, 1984.
*204 Merritt, Sikes & Craig, Greene & Cooper and Marc Cooper and Sharon L. Wolfe, Miami, for appellant.
*205 George F. Knox, Jr., City Atty., Mikele S. Carter, Asst. City Atty., and Jack M. Sobel, Asst. County Atty., for appellees.
Before NESBITT, FERGUSON and JORGENSON, JJ.
NESBITT, Judge.
Justine Higdon, as personal representative of the estate of Benny Higdon and on behalf of her children, appeals the dismissal of her complaint against Metropolitan Dade County, the City of Miami, and various connected officials. We affirm.
The decedent was killed by rioters in the Liberty City area of Miami during a civil disturbance. The riot was precipitated by the angered reaction of the black community to the acquittal that day of white officers who were charged with the unlawful homicide of a black suspect. The complaint alleged that although the defendants knew or should have known that violence would occur, they took no precautions to prevent the violence or to warn members of the community of the dangers involved. After the disturbance grew, it is alleged that the police withdrew from the area and afforded no protection to the community. Plaintiff claims that as a result of these breaches of duty, the decedent drove into this dangerous area without being warned and consequently was killed.
Count I of the complaint alleged a violation, pursuant to 42 U.S.C. § 1983, of the decedent's fifth and fourteenth amendment rights to be protected against arbitrary intrusions on his personal security and his right to due process. Based on the same statute, Count II alleged a violation of equal protection. Count III consisted of a claim of negligence under state law. The trial court granted the defendant's motion to dismiss and plaintiff appeals.

42 U.S.C. § 1983
Counts I and II of the complaint seek to state a cause of action under 42 U.S.C. § 1983 which provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
To adequately state a cause of action under this statute, the plaintiff must allege that a person acting under color of state law, deprived him of rights protected by the constitution or federal statutes. Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), Cooper v. Molko, 512 F. Supp. 563 (N.D.Cal. 1981). The violation need not be intentional; Huey v. Barloga, 277 F. Supp. 864, 872 (N.D.Ill. 1967) and may consist of an act of omission. Smith v. Ross, 482 F.2d 33 (6th Cir.1973).
The statute is not itself a source of substantive rights, but a method of vindicating federal rights conferred by the constitution and federal statutes. Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). As stated in Monroe v. Pape, 365 U.S. 167, 180, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961):
[O]ne reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.
Thus, the plaintiff must point to a specific constitutional or federal violation in order to prevail.

COUNT I
In Count I, the plaintiff alleged that by failing to provide adequate police protection *206 against violence in the black community the defendants violated the decedent's "constitutional right under the fifth and fourteenth amendments to be protected against arbitrary intrusions on his personal security and well-being and to be protected against violation of his right to due process."
The court, in Reiff v. City of Philadelphia, 471 F. Supp. 1262 (E.D.Pa. 1979), had occasion to consider a similar claim under 42 U.S.C. § 1983. In that case, the plaintiff alleged that while a business visitor in a local shop, she was shot by an individual who was robbing the store. She claimed that the city was liable for failure to provide adequate police security in light of its policy of not responding to calls until a crime has actually been committed. The court held:
This Court has been unable to find any precedent supporting plaintiff's contention that inadequate police protection is a violation of any constitutional right. In her memorandum of law in opposition to the defendant's motion, plaintiff contends that police protection is an essential governmental service and that failure to provide such essential governmental service is a constitutional violation. This contention must be rejected.
The Supreme Court of the United States has repeatedly pointed out that one must look to the Constitution itself in order to determine whether it explicitly or implicitly creates a constitutional right... . .
... .
The Constitution does not explicitly or implicitly provide a right to adequate police protection... ..
471 F. Supp. at 1265. See also Shortino v. Wheeler, 531 F.2d 938 (8th Cir.1976); Wooters v. Jornlin, 477 F. Supp. 1140, 1144 (D.Del. 1979); aff'd, 622 F.2d 580 (3d Cir.), cert. denied, 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980); Reedy v. Mullins, 456 F. Supp. 955 (W.D.Va. 1978). We agree with the federal court that there is no constitutional right to adequate police protection.
The plaintiff attempts to distinguish Reiff on the basis that the constitutional right here asserted is not the right to adequate police protection, but rather the due process right to personal security and well-being, which was deprived by the lack of protection. We reject this contention for several reasons. First, the plaintiff, in Reiff, couched her constitutional claims in terms of the denial of equal protection and due process under the fourteenth amendment, deprivation of her rights, privileges and immunities, deprivation of her right to a safe place to live and her right to reasonable security; however, the court found that the plaintiff was in effect claiming a constitutional right to adequate police protection. The same may be said of the plaintiff in the present case.
Furthermore, as the court, in Mitchell v. Louisiana High School Athletic Association, 430 F.2d 1155, 1158 (5th Cir.1970), noted:
[T]he due process clause of the fourteenth amendment does not insulate a citizen from every injury at the hands of the state. "Only those rights, privileges and immunities that are secured by the Constitution of the United States or some Act of Congress are within the protection of the federal courts... ." (quoting from 1 W. Barron & A. Holtzoff, Federal Practice § 37 at 200 (Wright ed. 1960)).
See also McDowell v. State of Texas, 465 F.2d 1342, 1345-46 (5th Cir.1971) (a general claim of the denial of due process is not the sort of deprivation of right, privilege or immunity which is secured by the constitution). Thus, the plaintiff's general claims of a due process right to personal security must be rejected.
Additionally, by Count I, plaintiff attempts to articulate a substantive right to recover damages caused by a breach of the peace. However, Congress, in passing the Civil Rights Act, considered imposing such liability and ultimately declined to do so. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In the absence of such legislation, courts have *207 uniformly determined that there is no substantive right to recover damages caused by a riot. See, e.g., Turner v. United States, 248 U.S. 354, 39 S.Ct. 109, 63 L.Ed. 291 (1919); Westminster Investing Corp. v. G.C. Murphy Co., 434 F.2d 521 (D.D.C. 1970); Monarch Insurance Co. of Ohio v. District of Columbia, 353 F. Supp. 1249, 1259-60 (D.D.C. 1973), aff'd sub nom., Aetna Insurance Co. v. United States, 497 F.2d 683 (D.C. Cir.), cert. denied, 419 U.S. 1021, 95 S.Ct. 497, 42 L.Ed.2d 295 (1974).
Accordingly, we find that Count I fails to state a cause of action.

COUNT II
In Count II of the complaint, plaintiff alleged that the defendants violated the black community's right to equal protection by deciding as a matter of policy to let certain segments of the black community engage in unlawful conduct; and in doing so, the plaintiff's decedent (who was white) was deprived of adequate police protection. While it is true that a denial of equal protection will support a § 1983 action, we conclude that Count II of the present complaint must fail.
The court, in Reiff, after deciding that there was no constitutional right to adequate police security, continued:
The fact that the United States Constitution does not provide a right to adequate police protection does not mean that whenever a state or municipality undertakes to provide such a service it may do so in a manner which violates a constitutional right.
471 F. Supp. at 1265-66. See Smith v. Ross (a law enforcement officer may be liable under § 1983 when by his inaction he fails to perform a statutorily-imposed duty to enforce the laws equally and fairly and thereby denies equal protection to persons legitimately exercising rights guaranteed them under state or federal law); Cooper v. Molko (failure of police upon notification to protect plaintiff from abduction violates equal protection clause where failure was based on the fact that plaintiff was associated with the Unification Church).
Plaintiff, in this case alleges in essence that the decedent was injured as a result of the defendants' denial of equal protection to the black community. She has not alleged, nor could she, that the police conduct denied the decedent equal protection, as for example, where the police choose not to protect a particular plaintiff because of race, color or religion. Cooper v. Molko.
Despite this shortfall, plaintiff argues that she has standing to assert the rights of third parties. While it is the general rule that one may not litigate the constitutional rights of third parties, Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), plaintiff correctly points out that the courts have carved out exceptions to this principle. These decisions are difficult to categorize; however, several factors predominate. See Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), Note Standing to Assert Constitutional Jus Tertii, 88 Harv.L.Rev. 423, 425 (1974); Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court, 71 Yale Law J 599 (1962). These include the presence of some substantial relationship between the litigant and third parties, see e.g., Singleton v. Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); NAACP v. Alabama ex rel. Patterson, 375 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the impossibility of the rightholder asserting his own constitutional rights; see, e.g., Singleton; NAACP; Barrows; and the possibility that the enforcement of a challenged restriction against the litigant would result indirectly in the violation of third party rights, see e.g., Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), pet. for reh'g denied, 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Griswold; Barrows.
None of these factors justifying standing have been alleged by plaintiff and we find that on the facts before us they could not be alleged. If a member of the black community has been injured as the result of an *208 alleged violation of a constitutional right, he may seek redress for his own claim. Because the relationship between the decedent and the black community is fortuitous at best, the basis upon which plaintiff claims standing, that is, to protect the constitutional rights of third parties, is not supportable. Our allowance of standing would decide only this plaintiff's claim and would not resolve the black community's rights.
Consequently, we conclude that the plaintiff does not have standing to argue an alleged equal protection violation.

COUNT III
Under the third count, plaintiff attempts to set out a cause of action in common law negligence. We readily affirm the dismissal of this count based on Ellmer v. City of St. Petersburg, 378 So.2d 825 (Fla. 2d DCA 1979). Like the plaintiff in the present case, Ellmer, unaware of the riot, drove through the area of disturbance and was attacked. The court upheld the dismissal of the plaintiff's complaint filed against the city for its failure to warn of the riot stating:
Just as the city's handling of a riot is an activity involving basic planning decisions, so too any attempts to warn of riot conditions must involve planning with respect to how, when, and by what means it is to be accomplished so as to avoid causing public panic and to prevent confrontations with rioters which might exacerbate the situation. Decisions are also necessary concerning how to employ available manpower to effectuate the warnings while at the same time maintain sufficient forces to deal directly with the rioters and contain the spread of the riot to other areas of the community.
Ellmer at 827. See also Wong v. City of Miami, 237 So.2d 132 (Fla. 1970). Following these decisions, we hold that the activities complained of were part of the planning level function of the governmental officials and thus the defendants are immune from liability.

CONCLUSION
For the foregoing reasons, we conclude that the trial court was correct in dismissing plaintiff's complaint and, accordingly, we affirm.